LEWIS v. BENNETTE. (No. 150.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 7, 1916. On Motion for Rehearing, March 28, 1917.)

1. LOGS AND LOGGING ⬥2 — SALES OF TIMBER — LATER CONVEYANCE OF FEE — CONSTRUCTION.

The owner in fee for a consideration of $10,500 sold all of the pine timber of a certain size to T. who was to have six years in which to remove the same, and if not removed within that time to "revert to us." Later the owner conveyed the fee to B. for a consideration of $3,976, save and except all the pine timber heretofore sold and conveyed to T. "as appears from our certain deed," etc. T. defaulted in his contract, and the timber was not removed within six years. Held, that title to timber on default of T. reverted to original owner, and did not revert to B. at end of six years.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 1–5.]

2. EVIDENCE ⬥461(3)—PAROL EVIDENCE TO VARY DEED—ADMISSIBILITY.

Where the description in a deed is definite and certain, parol evidence that other land than that described was intended to be conveyed is not admissible in trespass to try title.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2131.]

Appeal from District Court, Montgomery County; L. B. Hightower, Sr., Judge.

Action by J. O. H. Bennette against J. W. Lewis, trustee, and others. Judgment for plaintiff against defendant named, and he appeals. Reversed and rendered.

John W. Lewis and G. P. Dougherty, both of Houston, and W. N. Foster, of Conroe, for appellant. Howard Bennette and A. L. Kayser, both of Conroe, for appellee.

BROOKE, J. This is a suit brought by J. O. H. Bennette, appellee, against J. W. Lewis, trustee of the bankrupt estate of Banks Griffith & Son, and against Banks Griffith and M. E. Griffith, composing the firm of Banks Griffith & Son, O. N. Puckett, and Jesse Pitts; plaintiff alleging ownership of a certain 1,136 acres of land out of the W. S. Allen survey in Montgomery county, Tex., and the timber on same, by reason of the purchase of same from Banks Griffith & Son on the 26th day of July, 1907, and for the further purpose of canceling a contract of extension made between plaintiff, Bennette, and Banks Griffith and M. E. Griffith, made before they were adjudged bankrupts, extending the time for cutting the timber on the land, and to enjoin the defendant John W. Lewis, trustee, from cutting the timber on the land. A temporary writ of injunction was granted, and later the trial court sustained a plea to the jurisdiction of the court to issue the injunction, and dismissed the suit, and from the order dismissing the suit the plaintiff appealed to the Court of Civil Appeals, and the judgment of dismissal was reversed, the jurisdiction of the trial court to enjoin the trustee in bankruptcy being sustained, and the cause was remanded. The case was tried on its merits on January 8, 1916, and the court peremptorily instructed a verdict in favor of the plaintiff and against defendant John W. Lewis, trustee, on his cross-action, and dismissed the suit as to all other defendants, and on this verdict the judgment adjudging the title to the timber upon the 1,136 acres of land to be in the plaintiff, Bennette, canceling the extension of the contract and perpetually enjoining the defendant John W. Lewis from cutting and removing the timber on the 1,136 acres of land was entered, and further adjudging that the defendant John W. Lewis take nothing by his cross-action asserting title to the timber on the 1,136 acres of land against the plaintiff, Bennette, and seeking to recover the value of the timber removed from the land by the plaintiff. Appellant perfected his appeal to this court, and assigns errors.

It seems from the statement of facts in this case that Banks Griffith & Son, a part-

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

nership composed of Banks Griffith and M. E. Griffith, acquired the fee-simple title to a tract of 1,136 acres of land in the W. S. Allen league in Montgomery county, Tex., by two deeds, one executed and delivered by Miss Martha G. Pond, for herself and as executrix of the estate of Mary P. Sill, bearing date May 7, 1907, containing a .61 undivided interest in said tract of land, and the second a deed from George G. Sill, bearing date November 1, 1906, conveying a .39 undivided interest in said tract of land, and by said two deeds, Banks Griffith & Son acquired title to the tract of land.

On the 30th day of May, 1907, Banks Griffith & Son, for a recited consideration of $10,500, evidenced by a promissory note of even date therewith secured by vendor's lien, executed and delivered to M. R. Talley the following conveyance:

"The State of Texas, County of Montgomery:

"Know all men by these presents, that we, Banks Griffith & Son, a firm composed of Banks Griffith and M. E. Griffith, of Conroe, Montgomery county, Texas, for and in consideration of the sum of ten thousand five hundred ($10,500.00) dollars to be paid to us by M. R. Talley, as evidenced by his twenty-one (21) promissory notes of even date herewith, each bearing interest from and after June 30, 1907, until paid, and providing for ten per cent. (10%) on principal and interest thereof as attorney's fees if not paid when due and thereafter placed in the hands of an attorney for collection, have this day granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said M. R. Talley all of the pine timber ten (10) inches in dia. and larger than that size two feet above the ground, standing and growing on all of that certain tract, piece or parcel of land comprising eleven hundred thirty-six (1,136) acres, more or less, part of the W. S. Allen league, in Montgomery county, Texas, fully described in a deed from Miss Martha G. Pond to Banks Griffith & Son, bearing date May 7, 1907, and duly of record in volume 43, page 572, of the Deed Records of Montgomery county, Texas, to which deed and the record thereof reference is here had for a specific description of said land. The said M. R. Talley shall have six years from the date hereof in which to cut and remove said timber from said land, and all timber not so cut and removed from said land within said period of six years from the date hereof shall revert to us. The said M. R. Talley shall also have right of way free over said land for the purposes of cutting and removing said timber, and right of way free for wagon and tramroad across said land during said period of time for the purpose of reaching other timber owned by him, the said M. R. Talley, also free right of egress and ingress to and upon said 1,136 acres of land is hereby conveyed to the said M. R. Talley for the purpose of enabling him to cut and remove said timber during said period of six years. The said M. R. Talley shall also have free use of a sufficient amount of said land for the purpose of erecting, maintaining and operating his sawmill and all necessary adjuncts thereto, including lumber yards, dollyways, loading docks and tenement houses necessary in the operation of said mill during said period of six years, together with privilege of removing from said land all of his said improvements at any time within the six years and within six months after the expiration thereof.

"To have and to hold all and singular said pine timber, together with all and singular the rights hereinbefore enumerated unto the said M. R. Talley, his heirs and assigns, for said full period of six years from date hereof. And we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend all and singular the said timber, rights and privileges hereinbefore enumerated and for the time hereinbefore mentioned unto the said M. R. Talley, his heirs and assigns. It is expressly agreed and understood that the vendor's lien is hereby retained against said timber, rights and privileges until all of said notes, together with all interest thereon, shall have been fully paid, according to their face, tenor and effect, when this deed shall become absolute.

"Witness our hands this 30th day of May, A. D. 1907.          [Signed]  Banks Griffith & Son.
                                        "Banks Griffith.
                                        "M. E. Griffith.

"The State of Texas, County of Montgomery:

"Before me the undersigned authority in and for the state of Texas, county of Montgomery, on this day personally appeared Banks Griffith and M. E. Griffith, who compose the firm of Banks Griffith & Son, and each of whom acknowledged to me that they had executed said instrument for all of the purposes and consideration therein expressed.

"Given under my hand and seal of office this 31st day of May, A. D. 1907.
                                        "C. W. Nugent,
"[Seal]      Notary Public, Montgomery County."

On July 26, 1907, Banks Griffith & Son executed and delivered a deed conveying to the appellee, J. O. H. Bennette, the tract of 1,136 acres of land hereinbefore described, saving and excepting from the operation of said deed all the pine timber which was 10 inches in diameter and upwards upon said land, said deed being as follows:

"The State of Texas, County of Montgomery:

"Know all men by these presents, that we, Banks Griffith & Son, a firm composed of Banks Griffith and M. E. Griffith, of Conroe, Montgomery county, Texas, for and in consideration of the sum of three thousand nine hundred seventy-six and no/100 dollars to be paid to us by J. O. H. Bennette as evidenced by his two certain promissory notes of even date herewith, each for the sum of one thousand nine hundred eighty-eight and no/100 dollars, the first of said notes being due and payable on or before July 26, 1908, and the other of said notes being due and payable on or before July 26, 1909, each of said notes bearing interest from date at the rate of ten per cent. per annum until paid, each providing for ten per cent. on the principal and interest thereof, as attorney's fees if not paid when due, and thereafter placed in the hands of an attorney for collection, and each of said notes secured by vendor's liens on the land hereinafter described, have this day bargained, sold and conveyed, and do by these presents grant, bargain, sell and convey unto the said J. O. H. Bennette, of Conroe, Texas, all of the following described tract, piece or parcel of land, a part of the W. S. Allen league situated, lying and being in the county of Montgomery in the state of Texas, the land hereby conveyed being eleven hundred and thirty-six acres, more or less, fully described in a deed from Miss Martha G. Pond to said Banks Griffith & Son bearing date May 7, 1907, and recorded in volume 43, page 572 of the Deed Records of said Montgomery County, Texas, to which deed and the record thereof reference is here had for further and more specific description of said 1,136 acres of land, save and except, however, from this conveyance, all the pine timber ten inches in diameter and larger than that size on all of said 1,136 acres of land, which pine timber we have heretofore sold and conveyed to M. R. Talley, and this conveyance is also made subject to certain rights and privileges in the way or right of

ingress and egress upon said land and rights of way over and across the same, and certain leasehold on a part thereof for the erection of a sawmill, lumber yard and tenement houses and other improvements, to the said M. R. Talley, as all of which will fully appear from our certain deed and bill of sale to the said M. R. Talley, of date May 30, 1907, to which reference is here made for a full recital of all of said rights and reservations.

"To have and to hold all and singular said land, together with all and singular the rights and appurtenances thereunto in any wise belonging, unto the said J. O. H. Bennette, his heirs and assigns forever, subject to the foregoing reservations and limitations, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said land and premises, subject to the aforesaid reservations and limitations, against the lawful claims of all persons whomsoever lawfully claiming or to claim the same or any part thereof. It is expressl⑨ agreed and stipulated, however, that the vendor's lien is hereby retained against all of said land until all of said notes shall have been fully paid according to their face, tenor and effect, when this deed shall become absolute.

"Witness our hands, at Conroe, Texas, this 26th day of July, A. D. 1907.
                    "Banks Griffith & Son.
                    "Banks Griffith.
                    "M. E. Griffith.

"The State of Texas, County of Montgomery:

"Before me, the undersigned authority in and for Montgomery county, Texas, on this day came and personally appeared Banks Griffith and M. E. Griffith, who compose the firm of Banks Griffith & Son, and whose names are subscribed to the foregoing instrument, both of whom are to me well known to be the persons whose names are subscribed to said instrument, and they, and each of them, acknowledged to me that they had executed the same for all the purposes and consideration therein expressed.

"Given under my hand and seal of office at Conroe, Texas, this 26th day of July, A. D. 1907.                    Ben T. Laws,
"[Seal] Notary Public, Montgomery Co., Texas."

Talley failed to live up to the contract contained in his deed to convey the purchase of said timber and therefore Griffith & Son·recovered their title to the same.

After the expiration of the six-year time limit fixed in the timber deed from Banks Griffith & Son to M. R. Talley, Banks Griffith & Son, in October, 1913, procured from the appellee, Bennette, an agreement giving the said Banks Griffith & Son two years from May 1, 1913, in which to cut and remove the timber from the 1,136 acres of land hereinbefore described. On the 4th day of August, 1914, Banks Griffith & Son were adjudged bankrupts, and the defendant John W. Lewis was soon thereafter duly elected and qualified as trustee of the estate of the bankrupts, Banks Griffith & Son, and after he qualified he asserted title to the pine timber upon the said tract of $1,136 acres of land, as property of the estate of said bankrupts, as the six-year time limit in the deed from the bankrupts having expired several months before that time. The suit, as before stated, was brought by Bennette, asserting title to the pine timber on the 1,136-acre tract of land, to cancel the extension agreement made between plaintiff and Banks Griffith & Son be-

fore they were adjudged bankrupts, and to enjoin Lewis, trustee, as above stated, from cutting and removing the pine timber. Lewis trustee, filed a cross-action, asserting title to the pine timber, seeking to recover from plaintiff the value of timber cut and removed by the plaintiff.

It is the contention of plaintiff that he having acquired title to the land upon which the timber was standing, before the expiration of the time limit fixed in the timber deed from Banks Griffith & Son to Talley, the reversion of the title to the timber inured to his benefit, and in fact reverted to him. The, following agreement is found in the statement of facts:

"In the above numbered and entitled cause the parties make the following agreements for observance in the trial of this suit:

"First. On said trial all parties hereto may read from the deed records of Montgomery county such muniments of title or other instruments that they may desire to introduce in evidence; it being intended hereby to waive the filing of certified copies and giving notice thereof, and to permit the reading of said records and instruments therefrom just as though they were the original instruments and the same had been filed and notice thereof given: Provided that no objection to the introductions of said instruments other than is hereby indicated shall be waived.

"Second. It is agreed that as to the land upon which the timber in controversy is, or was, situated that Banks Griffith & Son are common source of title, holding the same by virtue of two deeds as follows: (a) A deed from Miss Martha G. Pond individually and as executrix of Mary P. Sill, of date May 7, 1907, which is of record in volume 43, page 572 et seq. of the Deed Records of Montgomery county. (b) Deed from George G. Sill to Banks Griffith & Son, dated November 1, 1906, of record in the Deed Records of Montgomery county, vol. 41, p. 549 et seq., and also that the said Banks Griffith & Son, by virtue of said deeds, acquired a good and marketable title to the lands described therein and to all timber standing and growing thereon at the time of the delivery of said deeds; including the timber in controversy in this suit.

"Third. Since the institution of this suit, and during the months of June and July, 1915, plaintiff J. O. H. Bennette, entered upon said land described in said deeds above mentioned, and from that portion of same lying west of the public road, known as the Conroe and Willis road (being the graded road between said two towns), and cut and converted into sawlogs 660,320 feet of timber, log scale, and after cutting the same transported it to the tram railroad of the Delta Land & Timber Company and sold the same to said company, and said plaintiff also took up from the same land 95,-922 feet of timber, log scale (being logs that had been theretofore cut by defendant), and transported the same to said tram railroad and sold the same to the Delta Land & Timber Company.

"Fourth. It is further agreed that the timber herein above described sold by plaintiff to the Delta Land & Timber Company aforesaid is timber that M. R. Talley or his assigns would have had the right to cut under and by virtue of his deed from Banks Griffith & Son of date May 31, 1913, which deed is here referred to for other and further description; said timber being embraced within that described in said deed. By this agreement, however, it is not intended to say that Talley had, or would have, had, any such right to cut after the expiration of the period of time mentioned in said,

deed, or that he did not have such right; that question being left open."

Also the following agreement was made: "First. It is agreed that the market value of the timber in controversy in this suit delivered at the tramroad of the Delta Land & Timber Company at the time and place of delivery as referred to in the third paragraph of the agreement hereto made between the parties hereto was and is five dollars per thousand feet, log scale; and that the market value of said timber as stumpage before the same was cut at the time mentioned in said third paragraph was and is two and 50/100 dollars per thousand feet, log scale.

"Second. It is further agreed that the market value of the timber in controversy—that is to say, the stumpage value before the same was cut during the period from November ——, 1914, to May 31, 1915, was $1.50 per thousand feet, log scale."

The extension agreement reads as follows: "The State of Texas, County of Montgomery:

"Know all men by these presents, that this agreement made and entered into by and between Banks Griffith & Son, a firm composed of Banks Griffith and Morrison Griffith, parties of the first part, and J. O. H. Bennette, party of the second part, witnesseth:

"That whereas, the parties of the first part were the owners of the pine timber ten inches in diameter and over, standing and growing on the hereinafter described land, with a time limit for the removal thereof, which said time limit has expired and thereby vested title thereto in the party of the second part, but it being the desire of the parties hereto to extend the time limit for the removal of said timber on that portion of the land hereinafter mentioned for two years from May 1, 1913:

"Therefore, in consideration of the premises, and the sum of one dollar to him in hand paid by the party of the first part the party of the second part hereby gives and grants to said first parties the right to enter upon and remove all pine timber —— inches in diameter and over, for a period of two years from May 1, 1913, off of and from that portion of the tract of eleven hundred acres of land out of the Wm. S. Allen league in Montgomery county, Texas, lying west of the Willis and Conroe public road, said eleven hundred acres being the same purchased by second party from first parties, the portion thereof affected being that lying west of said public road. Title to all said timber not removed within said period shall revert and vest in second party. Right of ingress and egress over and upon said land, with privilege of placing thereon and right of removal therefrom all improvements necessary to cut, handle and remove said timber are hereby given.

"Witness our hands this the —— day of October, 1913. [Signed] Banks Griffith.
"Morrison Griffith.
"J. O. H. Bennette."

In the first and second assignments of error, complaint is made as follows:

"The trial court erred in giving as his general charge to the jury the following instruction: 'Gentlemen of the jury: In this case you are instructed to find for the plaintiff setting aside and canceling the extension contract of date October ——, 1913, signed by J. O. H. Bennette, and Banks Griffith and Morrison Griffith, as prayed for in plaintiff's second amended petition, and you will also find for plaintiff for the title to the timber sued for. You will find against the defendant J. W. Lewis on his cross-action.'

"Said charge was erroneous for the following reasons, to wit:

"(a) Because the undisputed evidence in this cause shows that defendant is entitled to recover on his cross-action the damages proved, it appearing from the deeds in evidence that plaintiff never acquired or had title to the timber for the value of which he (defendant) sues, and it further appearing that defendant had title thereto at the time plaintiff cut same. Said charge is erroneous because its effect is to give an improper construction of the deeds in evidence, especially the deed from Banks Griffith & Son to M. R. Talley, and the deed from Banks Griffith & Son to plaintiff, J. O. H. Bennette. The proper construction of said deeds shows that Griffith & Son never conveyed said timber, the value of which is in controversy on defendant's cross-action to plaintiff, and never conveyed their reversionary interest and title which Griffith & Son had and retained at the time they conveyed said timber to M. R. Talley.

"(b) Because the instruments in evidence, to wit, the deeds referred to in the foregoing paragraph, together with the undisputed evidence that the timber, the value of which is in controversy, was embraced in the deed to Talley, show that said timber reverted to and became the property of Banks Griffith & Son and remained their property until their adjudication of bankruptcy, and thereupon passed to defendant, and defendant, therefore, had title to said timber at the time it was converted by plaintiff.

"(c) Because under the undisputed evidence in this case as referred to in the foregoing paragraphs, the court should peremptorily instruct the jury to find for defendant on his cross-action and submit for their consideration only the question as to whether the damages suffered by defendant should be the value of the timber as stumpage, and on the ground where found by plaintiff, or the value at the time of sale and delivery to the Delta Land & Timber Company.

"All of said objections were urged to the charge complained of before the court read the same to the jury, all of which is shown by defendant's bill of exceptions No. 2, which is here referred to and made a part hereof."

"The court erred in failing and refusing to give this defendant's special charge to the jury, which said special charge is in words and figures as follows, to wit: 'Gentlemen of the jury: At the request of the defendant you are charged as a matter of law in this case that defendant is entitled to recover on his cross-action against plaintiff, and the only question for your consideration is the extent of damage suffered by defendant.' Said charge was duly submitted to the court before the court had read his general charge to the jury, and was refused, all of which is shown by defendant's bill of exception No. 1, here now referred to and made a part hereof."

[1] The assignment must be sustained. It seems to be agreed by the parties to this suit that under the terms of the timber deed from Griffith & Son to Talley, May 30, 1907, the title to the timber reverted. The controversy is, to whom did the title revert, it being the contention of appellant that the title to the timber reverted to the grantors in the deed, as provided therein, and that upon the adjudication of said grantors as bankrupts, the title to the timber passed to and vested in the trustee of the estate of said bankrupts, who is the appellant. It is contended, on the other hand, that it was the intention of the parties to the timber deed to Talley that the title to the timber, at the expiration of six years, should revert to and vest in the party who might happen to own the land at that time; or, in other words, to the vendee of the grantors in the deed to the land.

It is therefore necessary, in the adjudication of this case, to pass upon and construe the timber deed from Griffith & Son to Talley, and the deed to the land from Griffith & Son to Bennette. The way we view these two instruments, they are free from ambiguity, and are to be construed as meaning what the words ordinarily import. Griffith & Son did not undertake to convey anything to Bennette except the fee-simple title to the land. They did not convey any timber growing upon the said land except that which was less than ten inches in diameter. The balance of the timber then growing upon the said land had been previously conveyed, for a consideration greater than the consideration paid for the land itself, to another and different party. The language of the timber deed says that if the same is not cut and removed within six years, that the title to the same shall revert to the grantors. The fact that Griffith & Son were adjudged bankrupts would not in any way alter the situation. All their rights passed to and vested in the trustee in bankruptcy. At the end of the time limit mentioned in the deed to the timber, to wit, six years, Griffith & Son and Bennette, the plaintiff, extended, by further agreement, the time in which to cut the timber, two years. This was entirely unnecessary, as the title to the timber was already vested in them, the Griffiths. There is now pending in our Supreme Court a case appealed from this court (Chapman v. Dearman, 181 S. W. 808); to be more correct, the case was certified by this court to the Supreme Court, this court holding that a deed conveying the timber in an ordinary form of warranty deed conveyed the absolute fee-simple title to the timber described, and the title thus passing in fee simple, the owner of the land could not compel the owner of the timber to remove the same from the land. Upon the final decision of this case rest many cases of like character, in which a time limit was set out in the deeds.

[2] This court, in the case of McFaddin v. Johnson, 180 S. W. 306, said:

"It has been held that, where the description in a deed is definite and certain, parol evidence that other land than that described was intended to be conveyed is not admissible in trespass to try title; it being only in a suit to correct a deed on the ground of fraud or mistake that its terms can be so varied or contradicted."

There can be no uncertainty in either the timber deed from Griffith & Son to Talley or in the deed to the land from Griffith & Son to Bennette. Griffith & Son sold the land to Bennette for perhaps about one-third the consideration that they sold the timber to Talley. It is apparent, therefore, that the timber growing upon the land was much more valuable than the land itself. Bennette never had any title to the timber, because the instrument itself under which he claims especially excepted the timber from the operation of the instrument. The fact that Talley did not pay for the timber, and the title passed back into the hands of Griffith & Son, left the parties where they began. The title to the timber reverted to Griffith & Son, where it now remains. The timber, therefore, being the property of Griffith & Son, they being bankrupts, the trustee, Lewis, has been in lawful possession of the same, and the timber, from ten inches and upward, has been cut and removed, in defiance of appellant's rights. It would be a useless consumption of time for this court to go into a more extended discussion of the effect of the timber deed and the deed to the fee-simple title to the land. Therefore it is unnecessary to decide any question in this controversy, save and except to construe the two conveyances in question. It was error for the court to render judgment for appellee, and to enjoin appellant from entering upon the land and cutting the timber. Appellant was entitled to recover, on his cross-action, both the title to the timber standing on the land from ten inches and upward, and for the value of such timber cut and removed. The timber that had been cut and removed is shown to be of the value of $2.50 per thousand feet stumpage. By agreement it is shown that the plaintiff cut 756,-242 feet.

Therefore this cause is reversed, the injunction heretofore issued by the lower court is dissolved, and judgment is here rendered that the title and possession of said timber is in the appellant. Judgment is also rendered for appellant for $18,906 for timber shown to have been cut and removed.

Believing as we do, the cause is reversed, and judgment rendered for appellant.

### On Motion for Rehearing.

PER CURIAM. Rehearing denied.

DAVIS, J. (dissenting). Having disagreed with the majority of the court in overruling appellee's motion for rehearing, I dissent, as I believe the judgment of the lower court should be affirmed.

This cause was reversed and rendered by this court by opinion delivered December 11, 1916, and is again before us on appellee's motion for rehearing, and, as stated above, a majority of the court has overruled same. The facts are recited at length in the opinion delivered, and need not be more fully dealt with here. The controversy between the parties to this suit can be made clear by a recital of the following facts: Banks Griffith & Son owned in fee a tract of timbered land in Montgomery county. On May 30, 1907, for a recited consideration of $10,500, they sold certain pine timber on this land to M. R. Talley, and gave him certain rights by a duly executed instrument, in this language:

"All of the pine timber ten inches in diameter and larger than that size two feet above the ground, standing and growing (on the described land). The said M. R. Talley shall have six years from the date hereof in which to cut and

remove said timber from said land, and all timber not so cut and removed from said land within said period of six years from the date hereof shall revert to us."

The grantee, Talley, is also given additional rights and privileges to enable him to cut and remove the timber within the time limit of six years specified. On July 26, 1907, Banks Griffith & Son sold the land to appellee, Bennette, giving to him their general warranty deed thereto. This deed, after describing the property conveyed, contains the language which forms the basis for this suit, viz.:

"*Save and except*, however, from this conveyance, all the pine timber ten inches in diameter and larger than that size on all of said 1,136 acres of land, *which pine timber we have heretofore sold and conveyed to M. R. Talley*, and this conveyance is *also made subject* to certain rights and privileges in the way of right of ingress and egress upon said land and rights of way over and across the same, and certain leasehold on a part thereof for the erection of a sawmill, lumber yard and tenement houses and other improvements, to the said Talley, as all of which will fully appear from our certain deed and bill of sale to the said M. R. Talley of date May 30, 1907, to which reference is here made for a full recital of all of said rights and reservations." (Italics ours.)

The timber described in the conveyance to M. R. Talley was not all cut from the land within the six years, and at the expiration of that period there remained on the land a portion thereof. The rights of Talley, under his agreement and purchase, were all forfeited, and he ceased to have any rights in the property at the expiration of the six-year period, and he is not, nor is any one under or through him, asserting any rights in any of the property in this suit. It is conceded that the timber standing on the land at the end of the six-year period reverted, as to the Talley contract, and the sole question involved in this appeal is, To whom did it revert? Who became the owner of this timber when the rights of Talley expired?

It is earnestly contended by appellant, who stands in the rights of Banks Griffith & Son, that in the deed to appellee, the timber described in the Talley deed was absolutely excepted and reserved by the grantors, and that this estate continued in them, and when the timber reverted under the Talley contract, it reverted to Banks Griffith & Son, and is now owned by their trustee in bankruptcy, appellant. Opposed to this, appellee contends that all the estate held by Banks Griffith & Son passed to him by their deed to him, and upon the conclusion of the rights of Talley, the full estate and ownership of the entire property was vested in him. The rights of the parties on this appeal are fully presented by these opposing questions, and there are no collateral questions involved.

It is true that after the conveyance to Talley and before the six-year period had expired, Banks Griffith & Son became subrogated to the rights of Talley, but no right is claimed on this appeal by appellant, because of or in any way connected with such abrogation, and it therefore has no relevancy to the case as presented here. It is also true that after the subrogation of Banks Griffith & Son to the rights of Talley, they obtained from appellee a contract extending the rights held by Talley for two years beyond the six-year period, but by the judgment of the trial court this contract was pronounced invalid, and that action of the trial court is not complained of or asked to be revised, and it is therefore not necessary or proper for us to consider on this appeal that instrument for any purpose.

In the opinion delivered in this case a majority of the court holds that the conveyances from Banks Griffith & Son to Talley and appellee were free from ambiguity, and I agree to that portion of the opinion. Being free from ambiguity, it is not necessary for me to discuss the extraneous matters that could be called in aid in construing them if they were in any way ambiguous. They will be construed as meaning what the words used therein ordinarily import, and given that effect. Cravens v. White, 73 Tex. 577, 11 S. W. 543, 15 Am. St. Rep. 803. I need not resort to the rule of construction most favorable to the grantee. Cartwright v. Trueblood, 90 Tex. 530, 39 S. W. 930.

If in the deed from Banks Griffith & Son to appellee there is an express reservation of the full title to the timber, such reservation would operate as a constructive severance of the timber from the land, and leave the title to the land in appellee, and the title to the timber in Banks Griffith & Son, subject to the rights of Talley in both. Lodwick Lbr. Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803; Chapman v. Dearman, 181 S. W. 808. If this is the correct interpretation of that deed, then, upon the reversion of the timber under the Talley holding, it would remain with the estate in the timber held in the deed by Banks Griffith & Son, and appellant would become the owner. Such is the contention of appellant, and the court so held in its opinion delivered in this case, and in this holding I believe they are in error.

When Banks Griffith & Son executed the conveyance to Talley, they were the owners of the full estate in the entire property dealt with, holding in fee. After that conveyance they remained the owners of the same estate, lessened only to the extent of the portion passing to Talley. When they sold to appellee, they sold all of their original holding, "save and except" that previously disposed of to Talley. This left them with no rights or estate in the property of any character. All incidents to the property, all appurtenances thereto, all rights therein, all ownership thereof held by Banks Griffith & Son passed by the deed to appellee. In fact,

the full estate in all of the property passed by this deed, "save and except" that already passed to Talley. The language used in the deed cannot be construed to constitute a reservation of any estate in Banks Griffith & Son. There is no apparent attempt to reserve any portion of the estate to the grantors. The deed, by its plain language, limits the estate conveyed to that portion not before passed to Talley, but does not attempt to reserve anything to the grantors. The whole estate is conveyed, "together with all and singular the rights and appurtenances thereto in any wise belonging," excepting only such portion thereof as had previously passed to Talley. This is the only limitation upon the conveyance to the entire property, and is not a reservation of any interest to the grantors, but an exception of an estate in the whole, of which the grantors at the time had no interest, and which, but for the exception and limitation, would place the grantors in the attitude of selling and warranting the title to property they did not own and which they had previously sold.

The reversionary interest in the timber was an incident to the ownership of the land, and was held by Banks Griffith & Son at the time they deeded the land to appellee, and could have been reserved to them and retained by them in that deed, but they make no such reservation, nor does any of the language employed in the deed indicate any such effort or intent. Being a part of the estate held by Banks Griffith & Son at the time of their conveyance to appellee, and not being reserved to them in that conveyance, and that conveyance passing the full estate in the property, "save and except" the rights held by Talley, "together with all and singular the rights and appurtenances thereto in any wise belonging," it follows, necessarily, that when Talley forfeited his rights, they reverted to appellee, who held the balance of the estate, "with all and singular the rights and appurtenances thereto." The right to the reversionary interest in the timber was a right belonging to the original fee-simple holder, and passed by the express language of the deed to appellants. Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930; Arden v. Boone, 187 S. W. 997; Hancock v. Butler, 21 Tex. 804; Calder v. Davidson, 59 S. W. 300; Schaffer v. Heidenheimer, 43 Tex. Civ. App. 366, 96 S. W. 61; Id., 101 Tex. 658; McDaniel v. Puckett, 68 S. W. 1007.

It follows from what has been said that in my opinion the judgment of the trial court was correct, and that the majority opinion is in error in its holding in this case. I therefore think that appellee's motion for rehearing herein should be granted, and the judgment of this court reversing and rendering this cause should be set aside, and that the judgment of the trial court should be in all things affirmed.