## SOUTHERN PINE LUMBER CO. v. MARTIN et al. (No. 1242.)

(Court of Civil Appeals of Texas. Beaumont. May 27, 1925. Rehearing Denied June 17, 1925.)

1. **Logs and logging**  ⟜3(9)—**Grantee in deed excepting timber conveyed to another prior thereto held to acquire no reversionary interest in such timber.**

Where one conveyed timber under deed giving grantee 10 years to remove it, and thereafter conveyed land in fee excepting and reserving timber previously conveyed, *held* that grantees of fee did not thereby acquire grantor's reversionary interest in timber.

On Motion to Certify and for Rehearing.

2. **Courts**  ⟜247(5) — **Question not certified where no distinction in principle between case at bar and authorities approved by Supreme Court.**

The Court of Civil Appeals will not certify a question to the Supreme Court when it is unable to draw any distinction in principle between case at bar and authorities which have met with approval of Supreme Court.

Appeal from District Court, Trinity County; Carl T. Harper, Judge.

Action by Mrs. T. L. Martin and others against the Southern Pine Lumber Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

C. H. Crow, of Groveton, and R. E. Minton, of Lufkin, for appellant.

Poston & Seale, of Lufkin, and Dean & Humphrey, of Huntsville, for appellees.

WALKER, J. We take the following statement of the nature, result, and facts of this case from appellees' brief:

"This suit was filed by appellees against the appellant in the district court of Trinity county, Tex., on the 19th day of June, 1922, to determine the title to the merchantable timber standing on the 37½-acre tract and a 208-acre tract, of land parts of the B. B. B. & C. R. R. Co. survey of 428.6 acres in Trinity county, which was patented to I. N. M. Turner as assignee of said railroad company.

"Citation was served on the defendant on the 26th day of June, 1922, and thereafter the appellant cut and removed from said two tracts of land merchantable pine timber standing thereon, the quantity of which was, after it was cut, agreed upon between plaintiffs and defendants. After the cutting of the timber the plaintiffs filed their amended original petition and sued the defendant for the manufactured value of said timber, and in the alternative for its actual stumpage value.

"Appellees alleged both in their original petition and in their amended original petition that the defendant was claiming said merchantable timber under some sort of conveyance thereof, executed by J. A. Platt on October 4, 1911, wherein the said Platt undertook to convey to the Trinity County Lumber Company the merchantable pine timber then standing on said survey, and under an attempted extension undertaken to be executed by said Platt on August 22, 1921, to the defendant, Southern Pine Lumber Company, of the right of removal of said timber from said land until the 4th day of October, 1923; that in the original conveyance of said timber by said Platt to Trinity County Lumber Company 'whose rights and claim to have said timber have been transferred by said Trinity County Lumber Company to the defendant herein,' said Platt limited the time within which the timber might be removed from said land to the 4th day of October, 1921, and that the conveyance of said timber by said Platt to the Trinity County Lumber Company was only a conveyance of so much thereof as the Trinity County Lumber Com-

pany, or its assigns might remove from said land by or before the 4th day of October, 1921.

"Plaintiffs further alleged that, subsequent to the execution of said timber conveyance by Platt to the Trinity County Lumber Company, Platt did, on the 23d day of November, 1918, sell and convey the 208 acres of land to W. A. Hood and T. H. Wilkinson, under whom plaintiffs claim, and that on the 12th day of November, 1913, the said Platt did sell and convey unto S. T. Kerr, under whose grantees the plaintiffs claim and deraign title, the said 37½ acres of land, and that when the said Platt undertook to extend the time within which the said timber might be removed from said land from October 4, 1921, to October 4, 1923, the said Platt had parted with all right to extend the time within which the timber might be removed therefrom.

"The case was submitted to the jury on special issues as to the quantity of timber cut from the 208 acres, the stumpage market value thereof at the time it was cut and its manufactured value, and upon the answers of the jury the court rendered judgment for the plaintiffs for the stumpage value of the timber, as found by the jury, with interest from March 6, 1924, the date of judgment. The court in its judgment expressly refused plaintiff's recovery for the timber on the 37½ acres of land because they had failed to show title in themselves thereto.

"The plaintiffs deraign title to the timber under a regular and consecutive chain of title under J. A. Platt, as common source, and the defendant, while offering no evidence whatever in support of its title, claims it under a deed from J. A. Platt to the Trinity County Lumber Company, bearing date October 4, 1911, wherein was conveyed all of the merchantable timber standing and growing on 403.8 acres of land, of which the 208 acres, timber on which is in controversy herein, was a part, and in the said deed from Platt to the Trinity County Lumber Company the entire tract of land was described by metes and bounds.

"In said deed from Platt to the Trinity County Lumber Company the right of removal of said timber was expressly limited to ten years, in the following paragraph thereof, to wit, 'I also give and grant unto the said Trinity County Lumber Company ten years' time from the date hereof in which to cut and remove the timber off of the above described tract of land.' Said deed made no provision for an extension of the time within which such timber might be cut and removed.

"The appellant claims the timber under the deed from Platt to Trinity County Lumber Company and under an attempted extension of the right to remove the same executed to it by Platt, and bearing date August 22, 1921.

"The plaintiffs deraign title to the timber from J. A. Platt as common source under the following deeds:

"(a) Special warranty deed from J. A. Platt to W. A. Hood and T. H. Wilkinson, of date November 23, 1918. This deed has the usual granting and habendum clauses, and is recorded in the deed records of Trinity county, Tex., December 4, 1918.

"(b) General warranty deed from W. A. Hood and T. H. Wilkinson to T. L. Martin, bearing date February 17, 1919. This deed has the usual granting and habendum clauses, and

is recorded in the deed records of Trinity county, Tex., March 13, 1919.

"(c) Proof of· the death of T. L. Martin and of the fact that the plaintiff, Mrs. T. L. Martin and the said T. L. Martin intermarried in March, 1910, and that the said T. L. Martin died in March, 1920, leaving the plaintiff, Mrs. T. L. Martin as his surviving widow, and the other plaintiffs as his sole surviving heirs at law.

"The deed from J. A. Platt to W. A. Hood and T. H. Wilkinson contains the following reservations and exception, to wit: 'There is excepted and reserved from this conveyance the merchantable timber growing, standing and being situated on same heretofore sold and conveyed by J. A. Platt to Trinity County Lumber Company by deed of date October 4, 1911, of record in volume 45, on pages 44 to 46 of the Trinity County Deed Records, and also the right of way privileges given to said company by said deed.'

"The deed from W. A. Hood and T. H. Wilkinson to T. L. Martin contains the following reservation and exception: 'There is excepted and reserved from this conveyance the merchantable timber growing, standing, and being situated on said land, which was heretofore sold and conveyed by J. A. Platt to the Trinity County Lumber Company by deed of date October 4, 1911.'"

## Opinion.

[1] Under the chain of transfers from Platt to Hood and Wilkinson, and from them to Martin, and under their claim of heirship under Martin, appellees acquired no title to or interest in the timber in controversy. The deed from Platt to Trinity County Lumber Company vested title in the grantee only to so much of the timber as might be cut and removed during the period fixed by the terms of the contract. Houston Oil Co. v. Boykin, 109 Tex. 276, 206 S. W. 815. Had Platt retained the title to the land at the expiration of ten years, he would have been, under the construction given by our courts of his deeds to the lumber company, the owner of all timber not cut. Now, in selling the land, Platt did not sell the timber, but expressly "excepted and reserved" from his conveyance the timber previously sold by him to the Trinity County Lumber Company. Not having sold the timber, ·but having expressly reserved it, his conveyance to Hood and Wilkinson did not vest in them his reversionary interest in the timber. This identical question was before this court in Lewis v. Bennette, 193 S. W. 233. In that case, Banks Griffith & Son "granted, bargained, sold and conveyed * * * unto the said M. R. Talley all of the pine timber ten (10) inches in dia. and larger than that size two feet above the ground, standing and growing on all of that certain tract, piece or parcel of land comprising eleven hundred thirty-six (1,136) acres, more or less. * * * in Montgomery county, Texas."

It was further provided in the deed that

"the said M. R. Talley shall have six years from the date hereof in which to cut and remove said timber from said land, and all timber not so cut and removed from said land within said period of six years from the date hereof shall revert to us."

Afterwards, Banks Griffith & Son sold the land to J. O. H. Bennette, saving and excepting however, from the terms of their conveyance to Bennette "all the pine timber 10 inches in diameter and larger than that size on all of said 1,136 acres of land, which pine timber we have heretofore sold and conveyed to M. R. Talley."

In a contest between Bennette, claiming under his deed from Banks Griffith & Son, and Lewis, a trustee in bankruptcy for Banks Griffith & Son, the trial court held that the reversionary interest reserved to Banks Griffith & Son in their deed to Talley passed to Bennette. This court reversed that holding, saying:

"The controversy is, to whom did the title revert, it being the contention of appellant that the title to the timber reverted to the grantors in the deed, as provided therein, and that upon the adjudication of said grantors as bankrupts, the title to the timber passed to and vested in the trustee of the estate of said bankrupts, who is the appellant. It is contended, on the other hand, that it was the intention of the parties to the timber deed to Talley that the title to the timber, at the expiration of six years, should revert to and vest in the party who might happen to own the land at that time; or, in other words, to the vendee of the grantors in the deed to the land.

"It is therefore necessary, in the adjudication of this case, to pass upon and construe the timber deed from Griffith & Son to Talley, and the deed to the land from Griffith & Son to Bennette. The way we view these two instruments, they are free from ambiguity, and are to be construed as meaning what the words ordinarily import. Griffith & Son did not undertake to convey anything to Bennette except the fee-simple title to the land. They did not convey any timber growing upon the said land except that which was less than ten inches in diameter. The balance of the timber then growing upon the said land had been previously conveyed, for a consideration greater than the consideration paid for the land itself, to another and different party. The language of the timber deed says that if the same is not cut and removed within six years, that the title to the same shall revert to the grantors. The fact that Griffith & Son were adjudged bankrupts would not in any way alter the situation. All their rights passed to and vested in the trustee in bankruptcy. At the end of the time limit mentioned in the deed to the timber, to wit, six years, Griffith & Son and Bennette, the plaintiff, extended, by further agreement, the time in which to cut the timber, two years. This was entirely unnecessary, as the title to the timber was already vested in them, the Griffiths."

Our Supreme Court denied writ of error, thereby approving our construction of the deeds discussed in that case. We are unable to distinguish on principle the deeds from Platt to the Trinity County Lumber Company, and the deeds from Platt to Hood and Wilkinson, from the deeds by which Banks Griffith & Son conveyed the 1,136 acres of land in the Lewis v. Bennette Case just discussed.

Appellant has presented many assignments which, if sustained, could only result in a reversal and remanding of the case. Therefore we do not discuss these in view of our disposition of the principal assignment.

It follows from what we have said that the judgment of the trial court must be reversed, and judgment here rendered in favor of appellant.

## On Motion to Certify and for Rehearing.

[2] Appellee has asked us to certify to the Supreme Court the issues involved in the construction of their deed. We recognize the importance to appellees, as well as to the general jurisprudence of this state, of a correct construction of the character of deed involved in this appeal. If we were able to draw any distinction in principle between the deed in this case and in Lewis v. Bennette (see, also, Adams v. Fidelity Lumber Company, 201 S. W. 1034), we would certify this question to the Supreme Court in order that we might have its construction of the deed before entering our final judgment. But, as said in our original opinion, it seems to us these two deeds have an identical legal effect. We do not believe a question should be certified to the Supreme Court when a Court of Civil Appeals is unable to draw any distinction in principle between the case at bar and the authorities which have met with the approval of our Supreme Court. The motion to certify is therefore denied.

At the request of appellant, we find that the deeds upon which we based our conclusions as to the character of title of the respective parties connecting appellant with the common source were introduced by appellee only for the purpose of showing common source. We have again reviewed, with the greatest care, appellees' construction of their deeds and the many authorities cited in support of their propositions. But believing that this case is ruled by Lewis v. Bennette, and without undertaking to go into the facts of this case beyond the propositions announced in Lewis v. Bennette, appellees' motion for rehearing is overruled. And in this connection, we would say that, as we understand appellees' position in this case, the proposition now advanced, as against our construction of the deeds, is the proposition upon which Judge Davis based his dissenting opinion in Lewis v. Bennette.