### CLAYTON et al. v. HUMBLE OIL & REFINING CO. et al. (No. 1461.)*

(Court of Civil Appeals of Texas. Beaumont. Feb. 12, 1927. Rehearing Denied Feb. 23, 1927.)

**1. Trespass to try title ⬦⟿44—Any evidence showing common source of title will prevent instructed verdict for defendants on such issue in trespass to try title.**

Evidence showing common source of title will prevent instructed verdict for defendants on such issue in suit in trespass to try title, regardless of who offered it, since, being in record, each party was entitled to its full legal effect.

**2. Deeds ⬦⟿53—Evidence held insufficient to establish as matter of law that deed was executed, in view of subsequent acts of parties.**

Evidence held insufficient to establish as matter of law that certain deed was executed, where grantee never asserted claim during lifetime, and grantor subsequently proposed to make land his home, notwithstanding recitation in inventory of grantee's estate.

**3. Tenancy in common ⬦⟿15(10)—Evidence in trespass to try title held to show as matter of law that defendant had acquired title by limitation as against cotenants.**

Evidence held to show, as matter of law, in trespass to try title, that defendant had acquired title by limitation as against cotenants

by taking and recording deeds, filing suit against cotenants to perpetuate evidence of execution of deed under which he claimed, holding lands by tenants, and paying taxes for whole limitation period, though such suit was dismissed and defendant subsequently refused to purchase without denying plaintiffs' interest.

**4. Tenancy in common ⬅⬆15(7, 8)—Adverse possession is not effective against cotenant, in absence of notice by information or unequivocal acts of tenant asserting adverse rights.**

In order for adverse possession to affect cotenants, notice must be brought home to them, either by information given by tenant asserting adverse right or by acts of such unequivocal notoriety that they will be presumed to have notice.

**5. Tenancy in common ⬅⬆15(7, 8)—Cotenant's registration of deed conveying entire tract to him is notice as matter of law to cotenants that he claims entire tract adversely to them.**

Mere registration of deed by one cotenant, which by its terms conveys to him entire tract of land, is notice as matter of law to the other cotenants that he is claiming entire tract adversely to them.

**6. Appeal and error ⬅⬆927(7)—Against instructed verdict for defendants, court will accept plaintiff's version of conflicting evidence.**

Against instructed verdict for defendants in trespass to try title, appellate court will assume, under conflicting evidence, that facts were as stated by plaintiff.

**7. Tenancy in common ⬅⬆15(4)—Adverse claimant's silence as to validity of cotenants' claim when they offered to sell their interest held not recognition of such interest.**

Silence as to validity of cotenants claim to land by one holding it by adverse possession, when cotenants offered to sell their interests, *held* not recognition of their interests in land, in view of prior acts of adverse claimant.

**8. Adverse possession ⬅⬆85(1)—Plaintiffs in trespass to try title must show defendant's claimed adverse holding was in fact subordinate.**

Where defendant in trespass to try title made prima facie case showing title by limitation, burden on plaintiffs to show that this holding was in subordination to their claim.

Appeal from District Court, Liberty County; Thos. B. Coe, Judge.

Suit in trespass to try title by Mrs. Rosa Clayton and others against the Humble Oil & Refining Company and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

W. D. Gordon and L. J. Benckenstein, both of Beaumont, and P. C. Matthews, of Liberty, for appellants.

John C. Townes, Jr., G. P. Dougherty, John E. Green, Jr., and C. F. Stevens, all of Houston, E. B. Pickett, Jr., and Llewellyn & Kayser, all of Liberty, C. R. Liskow, of Lake Charles, La., and T. L. Foster, of Dallas, for appellees.

WALKER, J. This was a suit in trespass to try title, instituted by the heirs of Josephus Clayton, who was a son of Dan Clayton, against the Humble Oil & Refining Company, Sun Oil Company, Progressive Oil Company, Gulf Production Company, and O. A. Schade, to recover a one-third interest in a tract of 255¾ acres out of the David Minchey league in Liberty county, Tex. J. F. Weed and D. J. Harrison were also sued as defendants, but the suit as to Weed was dismissed, and a severance was granted as to Harrison. Dan Clayton owned the tract of land in controversy at the time of his death, leaving it to his three children, to wit, a son, Josephus, Sarah Jane, who married Henry Brown, and Mary Ellen, who married Ben Abshier. It was conceded that appellees are the owners of the two-thirds interest inherited by Mrs. Brown and Mrs. Abshier from their father. But appellants contend that the one-third interest in the land inherited by Josephus from his father was owned by Josephus at the time of his death, and that, as they, as such heirs, have never parted with the title, this suit was instituted by them to recover the Josephus one-third interest in the estate of their father. Appellees contend that Josephus, after reaching his majority, sold his interest in this land to his uncle, J. W. Clayton, in 1870. No such deed was offered in evidence or shown to be in existence, but appellees sought to show that it had been executed and delivered. On the theory that, in fact, they held under a deed from Josephus Clayton to his uncle, John W. Clayton, appellees offered the following chain of title:

(a) Deed from A. Steusoff and A. L. Steusoff, acting as administrators of the estate of John W. Clayton, to Sim De Blanc, who had previously acquired the interests of Mrs. Brown and Mrs. Abshier.

(b) By deed of trust, dated December 19, 1894, after he had acquired the interest of Mrs. Brown and Mrs. Abshier, and the interest of the estate of John W. Clayton in the tract of land in controversy, De Blanc mortgaged the entire tract to W. D. Cleveland & Co.

(c) By deed dated January 24, 1895, De Blanc sold the entire tract to Joseph F. Cannon, who, as part of the consideration, assumed and agreed to pay the mortgage to W. D. Cleveland & Co., but failed to do so.

(d) Afterwards W. D. Cleveland & Co. foreclosed the mortgage against both Cannon and De Blanc on the entire tract of 255¾ acres, and on proper order of sale the entire tract was sold to Cleveland & Co. by the sheriff on the 3d day of November, 1896.

(e) Cleveland & Co. sold the entire tract

⬅⬆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to J. F. Lasch by deed dated the 7th day of November, 1896.

(f) Lasch sold the entire tract to appellee O. A. Schade by deed dated November 24, 1897, filed for record November 25, 1897. This deed, as did all prior deeds, contained field notes definitely describing and embracing the entire tract of land.

It was agreed by the parties to this litigation that the appellees, other than Schade, deraigned title to the interest claimed by them from and under Schade. At the time Schade took his deed, all the deeds in his chain of title were of record. In addition to claiming the land from and under all three of the children of Dan Clayton, under the chain of title above given, appellees plead the different statutes of limitation. On the issue of limitation, appellants in their brief concede:

(a) O. A. Schade duly acquired his deed, which by its description conveyed to him all the land in controversy, on the 25th of November, 1897.

(b) Schade paid the taxes each year from 1897 to the filing of this suit in 1924, before the same became delinquent.

(c) He duly rendered the land for taxes.

(d) He claimed and exercised dominion over all the land in controversy from the date he bought it in 1897 to the institution of this suit, by selling oil leases on it, by selling small tracts out of it, by expelling trespassers, etc.

(e) In 1910, he placed a tenant in possession of all the land in controversy, who cultivated, used, and enjoyed a small farm of possibly 30 acres, which possession continued without interruption until the filing of this suit; subsequently he placed a second tenant on the land, which possession continued without interruption until the filing of this suit.

(f) In 1908, Schade's attorneys, without consulting him, filed suit in the district court of Liberty county against these appellants, for the purpose of perpetuating the testimony of certain witnesses to the effect that Josephus Clayton, in 1870, sold his interest in the land in controversy to John W. Clayton. Schade's petition fully set forth the purposes of the suit, the name of the witnesses, and the testimony he wanted perpetuated. The record shows that appellants were duly served with copies of this petition; that they were fully advised of the nature and extent of Schade's claim to the land, as reflected by this petition; that they consulted an attorney in relation to this suit, and Schade's claim to the land; that they had an attorney investigate the records to ascertain the character of deeds under which Schade held, and, after the report was made to them by their attorney, they took no further action until a short while before this suit was filed.

(g) The Schade suit that was filed in 1908 was dismissed without being prosecuted to judgment.

(h) In 1912 or 1914, the appellants testified that they had the following correspondence with Schade regarding their interest in the land in controversy:

"Appellants urge that Mr. and Mrs. Mansfield, two of the appellants, testified that about twelve years previous to the trial of this case in February, 1926, Mrs. Mansfield wrote to O. A. Schade, 'asking him if he wanted to buy her interest in this property. She wrote and asked him if he cared to invest in her interest in the property that she had at Liberty, and we got a letter in a few days, saying he didn't care to invest, that at the time property wasn't worth anything over here, but might be later.' And, relative to the same alleged letter, Mrs. Mansfield testified that: 'I remember about twelve years ago having some correspondence with O. A. Schade concerning this property. I wrote and asked him if he would be interested in buying my interest in the land, and he answered he did not care to invest right then as land wasn't valuable at the present time. I did not know that he was claiming the land against me at that time.'

"On cross-examination, Mrs. Mansfield said: 'I don't remember whether it was 1912 or 1913; it was somewhere about twelve years ago. I don't remember whether it was 1910 or not.' Schade denied that he ever received such a letter and stated that he never wrote 'either of said parties any letter about any land in Liberty county.' It is argued by appellants, on page 42 of their brief, that it was for the jury to determine whether Mr. and Mrs. Mansfield's testimony was true, and that, if it was true, then Schade 'did not repudiate their claim and notify them that he was claiming it adversely,' and that 'the effect of this evidence is to negative such adverse claim.'"

Appellants did not offer any evidence or chain of title from and under the original grantee, but rested their title on the theory that they had established a common source title from and under Dan Clayton. When appellants rested, they had not offered a complete common source title (it not being necessary to give the details of this omission); but before closing appellees fully offered all necessary links to establish a common source title from and under Dan Clayton, showing all the links by which each party sought to connect with Dan Clayton.

On the issue of his deed from Josephus to John W. Clayton, the following fairly reflects all the evidence offered:

(a) The inventory of the estate of John W. Clayton contains the following item:

"One-third interest in 255¼ acres of land a part of the David Mincha league fully described in deed bearing date the 6th day of May, 1870, signed by Josephus Clayton conveying the one-third interest to J. W. Clayton. Said deed was recorded on the 26th of May, 1870, by Geo. Ricks, Clk. Valued at $150.00."

(b) All deed records of Liberty county were destroyed by fire December 12, 1874.

(c) The testimony of a daughter of John W. Clayton that she was present and heard

the contract between her father and Josephus Clayton, whereby he sold to her father the land in controversy, which she said was in 1874, and that a deed was executed. Contradicting the testimony of this witness, appellants showed that she had previously made an affidavit to the effect that she was present and heard the terms of the transaction, and that, in fact, no deed was executed.

(d) John W. Clayton died in 1878. During his lifetime he neither rendered the land for taxes nor paid taxes thereon. Josephus Clayton did not render the land for taxes, nor did he pay taxes thereon. After the death of John W. Clayton, the land was claimed by his administrators.

(e) In 1874, Josephus Clayton left Liberty county, and was gone for several years. He married while he was away, and his wife died before he returned. After returning to Liberty county, he married again, and asserted an active claim to his interest in this land. He took his second wife upon the land and tried to secure her consent to live there, but, as previously stated, he never, during his lifetime, rendered the land for taxes.

On the record thus made, the trial court instructed a verdict in favor of appellees for all the land in controversy, and that appellants recover nothing.

### Opinion.

Appellees would sustain this judgment on the following propositions:

(1) "Appellants failed to deraign title either from the sovereignty of the soil, or from a common source; therefore, the trial court properly instructed a verdict against them."

[1] This proposition is not sound, as it relates to the facts of this case. The evidence, as we have stated, shows that Dan Clayton was the common source of title claimed by the respective parties, and it is immaterial by whom this evidence was offered. Being in the record, each party was entitled to its full legal effect. Martin v. Southern Pine Lumber Co. (Tex. Civ. App.) 274 S. W. 181; Id., by Commission of Appeals, 284 S. W. 918.

(2) "All the evidence in this record bearing upon our contention that Josephus Clayton did, on or about May 6, 1870, convey his undivided one-third interest in the 255-acre tract of land, to his uncle, John W. Clayton, by deed duly executed which had been lost, is undisputed, and, being so clearly convincing and conclusive, the trial court would have been warranted in holding, as a matter of law, that such a deed was executed, and the act of said court in peremptorily directing a verdict for defendants may also be upheld on this issue."

[2] Appellees did not, as a matter of law, establish a deed from Josephus Clayton to John W. Clayton. As we have seen, John W. Clayton, in his lifetime, never asserted any claim to this land, while there was evidence that Josephus Clayton, a short while after his second marriage, and long subsequent to the date of the purported deed from Josephus Clayton to John W. Clayton, carried his wife to this land, asserted a claim to it, and proposed to make it his home. Apart from the recitations in the inventory, it could not be seriously contended that appellees, as a matter of law, had established such a deed. And, when the inventory is given only the weight to which it is entitled under the law announced in Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033, appellees' case is not materially aided thereby. In support of their proposition, appellees cite the following authorities: Dailey v. Starr, 26 Tex. 567; Le Blanc v. Jackson (Tex. Civ. App.) 161 S. W. 64; Clapp v. Engledow, 82 Tex. 290, 18 S. W. 146. It would serve no useful purpose to review these cases, for, clearly, they are not in point on the facts of this case.

(3) "On November 24, 1897, O. A. Schade purchased from John F. Lasch the entire 255-acre tract of land; Lasch executing to Schade a general warranty deed for said entire tract, describing it by definite field notes. Schade filed said deed for record on November 25, 1897, and, claiming title under said deed to said entire tract of land, he entered into actual possession of same through a tenant in October, 1910, and always claiming the whole tract of land as his own, he continued to use, occupy, and cultivate it and to pay all taxes thereon, for the full period of time necessary to mature title by limitation under both the five and ten year statute before this suit was filed on January 2, 1924; therefore, even if it be conceded that Schade was a cotenant of appellants, such use and possession of the land by him was hostile and adverse to appellants and constituted an ouster of them, and as a matter of law they were charged with notice and knowledge of the character thereof, and are now barred by limitation from asserting any right in or to said land or any part thereof."

[3] We believe the judgment of the trial court should be affirmed on this proposition. Admittedly, Schade had held and claimed all the land under a duly recorded deed, which by its terms conveyed to him all the land in controversy. He duly rendered it for taxes and paid all taxes due thereon before delinquency. He cultivated, used, and enjoyed the land for the full limitation period.

On our holding, under the foregoing propositions, the effect of this evidence on the issue of limitation must be determined on the theory that appellants and appellees were cotenants. Then conceding that Schade was in adverse possession during all the time of his occupancy, in the language of Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 89.

"In order to affect the cotenants with this adverse holding, notice of such fact must be brought home to them, either by information to this effect given by the tenant in common asserting the adverse right, or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim that they will be presumed to have notice of such adverse right."

[4, 5] The notice required in the cited case was "brought home to appellants" in three ways:

First. The record of the deeds from Cleveland & Co. to Lasch and from Lasch to Schade, which by their terms conveyed all the land in controversy, was notice as a matter of law to appellants that Lasch and Schade claimed to own all this land. While appellants contest this proposition, it seems to be so firmly established in our jurisprudence that an extended review of the authorities is not necessary to sustain it. For instance, this court, through Mr. Justice O'Quinn, in McBurney v. Knox, 259 S. W. 674, said:

"The registration of the deeds under which he claims is notice to his cotenants of their existence and of his adverse claim. Church v. Waggoner, 78 Tex. 203, 14 S. W. 581; Mayes v. Manning, 73 Tex. 43, 11 S. W. 136; Puckett v. McDaniel, 8 Tex. Civ. App. 630, 28 S. W. 360 (writ refused); Robles v. Robles (Tex. Civ. App.) 154 S. W. 230. The rule is well settled that, when one of several tenants in common executes a deed purporting to convey the entire premises to one who places his deed of record and enters into possession of the property, claiming title thereto, such possession is hostile to that of the cotenants and they are charged with knowledge of the hostile character thereof, and after the expiration of the statutory periods of limitation their rights will be barred."

Judge O'Quinn's proposition was directly affirmed by the Commission of Appeals in affirming our judgment (273 S. W. 819), wherein it was said:

"It is a familiar rule in this state that where one tenant in common executes a deed purporting to convey the entire premises to a third person, who enters into possession thereof, claiming title to the whole, this will constitute a disseizin of the cotenants and after the expiration of the statutory period will bar the right of the cotenants to recover. Authorities upon this proposition will be found in opinion of the Court of Civil Appeals, 259 S. W. 674."

See, also, Olsen v. Greele (Tex. Civ. App.) 190 S. W. 240; Id. (Tex. Com. App.) 228 S. W. 927; Huling v. Moore (Tex. Civ. App.) 194 S. W. 188; Carr v. Alexander (Tex. Civ. App.) 149 S. W. 219; Hardy Oil Co. v. Burnham, 58 Tex. Civ. App. 285, 124 S. W. 225; Honea v. Arledge, 56 Tex. Civ. App. 296, 120 S. W. 509.

Appellants distinguish the authorities upon which we base this conclusion on the ground that the propositions announced were in support of the conclusions of fact of the trial courts and were not the announcement of the legal effect of the mere recording of deeds. We do not think this distinction is sound. As we understand the authorities cited, they clearly hold that the mere registration of a deed to one cotenant, which by its terms conveys to him the entire tract of land, is notice, as a matter of law, to his cotenants, that he is claiming the entire tract of land adversely to them.

Second. Appellants had actual notice, through the filing of the suit against them by Schade, to perpetuate the evidence of the execution of the deed by Josephus Clayton to John W. Clayton, that he was claiming all the land under his deeds.

Third. Appellants were again given actual knowledge that Schade held under deeds conveying him all the land, when they had their attorneys examine the deed records of Liberty county to find for them the extent of Schade's claim and the character of the deeds under which he held.

It follows, from the fact that appellants had both actual and constructive notice of the extent of Schade's claim, that the only proposition that can be urged against his title by limitation is a recognition by him of the interests of appellants in the land while he was in possession thereof. As a circumstance to show such recognition, appellants rely on the fact that Schade dismissed his suit against them. The dismissal of this suit could have no such effect. Appellants made no appearance therein, asserted no adverse claim against the contention of Schade, but were advised by their attorneys, which advice they acted upon, to ignore that proceeding. This circumstance was without the least probative force against the adverse holding asserted by Schade.

[6] Again, appellants say that the correspondence testified to by them between them and Schade shows a recognition by him of their interest during the time of his actual possession. Against this instructed verdict, we must assume that the letter was, in fact, written in the terms testified to, that the purported answer was, in fact, written by Schade, and that both the letter and the answer related to the land in controversy, for as we construe the evidence, these issues were raised for the jury's consideration.

[7] What then do we have? A mere offer on the part of appellants to sell a claimed interest in the land to a hostile cotenant and one whom they knew to be hostile, and a refusal by him to purchase. True, he does not by express terms repudiate the claim of appellants. He had done that by taking a deed to their interest, recording his deed, filing suit against them setting up his hostile claim, rendering the land for taxes and paying all taxes thereon, and taking hostile possession thereof by a tenant. On the record he had made between himself and his cotenants, he was not again called upon to repudiate their claim. A mere silence on his part was not a recognition. His previous acts had been of such a nature that in law appellants could not be "deceived and lulled into repose" by a mere refusal to purchase what they offered to sell, when such refusal

did not go beyond merely saying he "did not care to invest right then as land wasn't valuable at the present time." There was no intimation that he had abandoned his previous hostile attitude. Occupying the relation he did to appellants, he might even have offered to buy their claim without in law recognizing them as his cotenants or without raising an issue against his hostile attitude. Under the facts of Schade's claim, a mere offer on his part to buy would in law be referred to an effort on his part to perfect a title already owned by him, and not to acquire a new independent outstanding title. This proposition was directly held in McLane v. Canales (Tex. Civ. App.) 25 S. W. 29.

"The greatest scope that can be given the testimony of Mr. Bryant is that, after he had bought from Margarita and Augustina, she (Clemencia) had offered to buy out his claim. This, in our judgment, cannot be construed as an admission of cotenancy, or such an act as could defeat her title."

See, also, Naylor & Jones v. Foster, 44 Tex. Civ. App. 599, 99 S. W. 115.

[8] By taking and recording his deeds, paying the taxes on the land, filing the suit, and holding the land by tenants, Schade made out a complete prima facie case of limitation. The burden rested on appellants to show that this holding was in subordination to their claim. They failed to raise an issue in their favor.

We have given the most careful consideration to the authorities relied upon by appellants, and especially their leading case of Liddell v. Gordon (Tex. Com. App.) 254 S. W. 1098. This case goes no further than to hold that evidence is admissible which tends to show that a cotenant claiming all the land and in possession thereof has "deceived and lulled into repose" his cotenants by statements made by him to them. What we have said in no way conflicts with anything said in that case, but, as we construe it, has full support therein.

It follows that the judgment of the trial court must be in all things affirmed, and it is accordingly so ordered.

### On Rehearing.

Appellants say we are in error in our construction of their brief, wherein we find that they made the concessions stated in paragraphs (d), (e), and (f) on the issue of limitation. We have again examined the brief, and it seems to us that these concessions are clearly made. However, as they place a different construction on their brief, we make the conclusions therein complained of, not as a concession by them, but on the undisputed evidence.

In all other respects, the motion for rehearing is overruled.