A. S. BURGESS v. SAMUEL H. MILLICAN.

1. VENDOR AND VENDEE – RIGHTS OF VENDOR IN POSSESSION AFTER PURCHASE-MONEY NOTE BARRED.—Where a mortgage for the payment of the purchase-money for land is executed simultaneously with the deed by which it is conveyed, the vendor has, until the purchase-money is paid or the mortgage foreclosed, the superior right. If the vendor go into possession after the vendee has made default, he cannot be turned out by an action of trespass to try title, although the purchase-money, as a debt, be barred by the statutes of limitation.

2. SAME.—In such case the fee will remain in the vendor, and the sale be conditional upon the performance of the contract by the vendee.

3. SAME.—The same rule applies to an administrator's sale.

4. STATUTE CONSTRUED—LAND.— Paschal's Digest, art. 1327, providing that the deed of the administrator, made upon the confirmation of such sale, shall vest in the purchaser the right or title of the testator or intestate, does not define the estate thereby conveyed. Such enactment becomes necessary from the provision of the probate law vesting the estate in the heirs.

5. CASE DISCUSSED AND APPROVED.—Dunlap *v.* Wright, 11 Tex., 597, discussed and approved.

6. VENDOR AND VENDEE.—See case where deed from heirs conveyed a title as against a purchaser at a sale by the administrator, and non-payment by such purchaser.

7. SAME.—A vendor holding a mortgage on the land sold to secure the purchase-money, on default by the vendee, and no reason for such default, is entitled to possession of the land, and to maintain an action to quiet his possession and to remove the cloud from his title by such sale.

APPEAL from Parker. Tried below before the Hon. J. A. Carroll.

April 9, 1878, A. S. Burgess brought suit in the District Court of Parker county against Samuel H. Millican. The petition gave a history of the transaction out of which the litigation arose, and it was alleged that in 1869 one Jane Collie died, in Parker county, having at her death a homestead or preëmption of one hundred and sixty acres of land, known as " the Jane Collie preëmption." She left four children, then minors,—W. F., John W., A. J., and Libitha A.

Collie; that shortly after their mother's death these children were taken by their uncle to Arkansas, where they remained; she left about $1,000 in value of personal property, and was owing but a very small sum; her estate was first administered upon by one Franklin, who was succeeded in the administration by A. J. Bell; that at the July Term of the Probate Court of Parker county, 1869, Bell having filed his final account, the court made a final settlement with him; the settlement account showed that all the debts of the estate had been paid, and that there remained $70 and the one hundred and sixty acres of land; no heirs appearing to claim the estate, the Probate Court at the same term made an order, on its own motion, directing that the money be paid to the State treasurer and ordering the sale of the land; that although a newspaper was published at the time in Parker county, yet no notice was published therein of said account; that under this order Bell sold the land to defendant Millican, on a credit of twelve months, for $301, making on September 27, 1869, a deed to Millican, and at the same time taking a note and mortgage from Millican to secure said purchase-money; that the purchaser was the acting clerk of the Probate Court, and knew of all the facts affecting the title to said land as affected by said sale; that Millican refused at maturity to pay for the land, and had not paid any part thereof.

Plaintiff claimed that he had bought of said heirs their entire estate as heirs of their mother.

It was alleged that Bell ceased to act as administrator in 1870; that plaintiff had taken possession of the land and had made valuable improvements thereon; that Millican never had been in actual possession of the land; that defendant Millican was asserting claim to the land, and that the claim was a cloud, &c. Prayer was first to remove the cloud made by the purchase by Millican; (plaintiff bringing into court the note and mortgage for cancellation;) and, second, in event of refusal of first prayer, that he have judgment for amount of the note and foreclosure of the mortgage.

The court sustained exceptions and demurrer to the petition. The plaintiff declining to amend, judgment final for defendant was rendered, and plaintiff appealed.

*A. J. Hood,* for appellant.

I. The court had no power or jurisdiction to make final settlement with the administrator Bell, and order sale of estate property of any sort, the debts having all been paid, until the heirs had first been cited by publication in a newspaper for twenty days. (Paschal's Dig., art. 1350; Marks *v.* Hill, 46 Tex., 345; 27 Tex., 495.)

II. Even if publication of notice to the heirs for twenty days had been made before the making of said final settlement and order for sale of the land, the court had no jurisdiction or power, on its own motion, to order a sale of the land, the debts being all paid. The court would not, in any event, have had jurisdiction to order sale of other than personal property. (Paschal's Dig., art. 1351.)

III. But if the land was legally sold, the note of $301 given by defendant Millican and the mortgage and the deed constituted but one instrument. (Dunlap's Adm'r *v.* Wright, 11 Tex., 597; 15 Tex., 305; 6 Tex., 174.)

By the terms and stipulations of the contract, (to wit, note, mortgage, and deed,) if valid, after the sale the actual better title to the land remained in the heirs of Jane Collie until their sale to plaintiff.

Defendant made and delivered the mortgage and the note. The mortgage and deed showed that defendant Millican had not paid for the land. (Baker *v.* Clepper, 26 Tex., 634; 11 Tex., 597; 18 Tex., 377; 15 Tex., 305; 6 Tex., 174; Estes *v.* Browning, 11 Tex., 237.)

IV. In all cases of sale of land, whether the buyer receives a deed absolute or a mere bond for title—let the terms of sale be what they may—the title as between the vendee and the vendor in possession, or the assignees of the vendor in possession, is not in the vendee until he pays the purchase-

money. (Baker *v.* Ramey, 27 Tex., 52; 16 Tex., 472; 6 Tex., 174; 11 Tex., 237.)

V. The plaintiff being in possession of the land and defendant Millican being out of possession, defendant Millican cannot, by virtue of the statute of limitation, avoid the payment of the note and mortgage given for the purchase-money and at the same time oust the plaintiff from the land. In such cases the statute of limitation is no defense. (Baker *v.* Ramey, 27 Tex., 52; Dunlap *v.* Wright, 11 Tex., 604; Lander *v.* Rounsaville, 12 Tex., 195; Robertson *v.* Paul, 16 Tex., 477.)

*Watts, Lanham & Roach,* for appellee.

I. Where an administrator filed his final account, and no heirs or claimants appeared or were represented at the subsequent term of the court, notwithstanding the publication of notice may not have been made for the full twenty consecutive days, the court has jurisdiction of the estate, and an order for the sale of real estate and confirming such sale, &c., would not be nullities. At most the want of notice would be an irregularity, that must be taken advantage of by direct proceeding, instituted within two years, &c. (Paschal's Dig., arts. 1350, 1351, 3676; Dancy *v.* Stricklinge, 15 Tex., 557; Burdett *v.* Silsbee, 15 Tex., 604; Hall *v.* Claiborne, 27 Tex., 222.)

II. The administrator's (A. J. Bell's) deed to Millican vested the title of the estate to the land in him, and the deed, note, and mortgage are not one instrument; nor is the legal effect thereof to vest the superior title in the estate or heirs until the purchase-money is paid. (Autrey *v.* Whitmore, 31 Tex., 623; Parker County *v.* Sewell, 24 Tex., 238.)

III. The note and mortgage set up, and upon which appellant alternatively sought judgment, is shown by appellant's pleadings to have been barred before the institution of this suit. (Paschal's Dig., art. 4604; Duty *v.* Graham, 12 Tex., 427.)

MOORE, CHIEF JUSTICE.—It was decided by this court in the case of Dunlap *v.* Wright, 11 Tex., 597, and has ever since been regarded by it as settled law, " that when a mortgage for the payment of the purchase-money for land is executed simultaneously with the deed by which it is conveyed, the vendor has, until the purchase-money is paid or the mortgaged foreclosed, the superior right; and if the vendor go into possession after the vendee has made default, he cannot be turned out by process of ejectment or trespass to try title, notwithstanding the claim for the purchase-money may be barred by the general law of limitations."

Having cited and commented upon a number of cases in support of its conclusion, the court says : " The effect of the principles in these cases is that the vendor's deed may be absolute; yet if a mortgage for the purchase-money be given back at the same time, the fee will absolutely remain in the vendor. The sale will be but conditional, the ultimate right of the fee depending upon the performance or non-performance of the conditions. If the purchase-money be paid, if the mortgage be satisfied, the seizin will be regarded as having been in the vendee *ab initio*, or from the date of the purchase. If not paid, the vendor will, in the language of Stow *v.* Tifft, 15 Johns., 458, be reseized free of the mortgage."

Whether the conclusion reached by the court can correctly be said to result from the giving of a mortgage, where it is not recognized, as at common law, as a defeasible conveyance of land, but is merely held to be—and rightly, under our statutes, (Act of May 15, 1838, vol. 2, p. 134; Act of February 5, 1840, vol. 4, p. 69)—a moneyed obligation secured by a lien upon land, is not now a matter for consideration. The views expressed by the court in Dunlap *v.* Wright have too long and too often been recognized and approved to be now questioned. Does, then, the fact that the sale in question in this case was made by an administrator, by order of the Probate Court, and that the statute requires the purchaser to give

26

personal security as well as a mortgage upon the land, alter the construction and effect of these simultaneously-executed instruments, which, by a familiar rule, are to be construed together as mere parts of an act or agreement? Certainly it has never been supposed or intimated in any of the previous cases that the taking of personal security for the purchase-money, when the vendor is acting for himself, will change the construction which would otherwise be given to the deed and mortgage; and we see no reason why it should be thought to do so when he is acting as a trustee for others. To hold that the deed of an administrator and mortgage of the purchaser, simultaneously executed, were not to be construed together and taken as the several parts of one transaction, and that when thus considered they should not be construed to have the same effect as if the vendor was acting in his own right, would be to make an invidious distinction against estates, for which we can see no just foundation, either in the spirit or policy of our laws regulating the settlement of estates of deceased persons.

To maintain the correctness of the judgment of the court below in this particular, we are cited by appellee's counsel to article 1327 of Paschal's Digest, which, after declaring the time and manner in which administrators shall make report of sales made by order of the court, and providing for the action of the court thereon, says: "After any such decree of confirmation shall have been made, upon the purchaser complying with the terms of sale the executor or administrator shall execute and deliver to him a conveyance of the property so sold, if it were either land or slaves, reciting therein the decree confirming the sale and ordering the conveyance to be made, which conveyance of land or slaves so made, shall vest the right and title that the testator or intestate had in the purchaser, and shall be *prima-facie* evidence that all the requisites of the law have been complied with in making the sale."

The necessity or appropriateness of a statutory provision

such as this is certainly very obvious, when it is remembered that the personal representative has no title or interest in the property of the estate sold and conveyed by him, but that title to it, immediately on the death of the owner, is cast upon, or vests in, the heirs or devisees, subject to be divested by the court for the purposes of administration. The statute, it is true, says the deed of the administrator, after the confirmation by the court, shall vest in the purchaser the right or title of the testator or intestate; but evidently it was not the purpose of the Legislature in its enactment to define or prescribe the characteristics or incidents of the estate thereby vested in him. It imparts no more than what the court says, in Dunlap v. Wright, results from the deed and mortgage *inter partes*, viz.: "If the purchase-money be paid, if the mortgage be satisfied, the seizin will be regarded as having been in the vendee *ab initio*, or from the date of the purchase." But though seizin or title vests in him by the deed, it is nevertheless lost to or divested out of him by his refusal or failure to comply with the terms or conditions upon and by which it was acquired.

If these views are correct, it necessarily results that appellant got by his deed from the heirs of Mrs. Collie a superior right to the land of appellee after his default upon the mortgage; that by virtue of this superior title he was *prima-facie* entitled to take and hold possession against appellee, and to maintain an action to be quieted in his possession, and for the removal of the cloud cast upon his title by the claim set up to the land by appellee under the administrator's deed. But it may be well enough for us to add, that we are not now called upon to determine whether or not appellee, notwithstanding his default upon the mortgage, may not be permitted by a court of equity, on a proper appeal to it, to still discharge the mortgage. Hence we are not to be understood as having intimated any opinion regarding it, if in any future stage of this litigation such a question should be presented.

There are other points of interest presented in the record,

but, as it is thought that what has been said will probably render their discussion unnecessary, we need not now notice them.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.