## LITTLE et al. v. WAGNER et al. (No. 1681.)

Court of Civil Appeals of Texas. Beaumont. April 11, 1928.

Rehearing Denied April 18, 1928.

**1. Adverse possession ⬤⟐115(4)—In trespass to try title, contention that defendants' adverse possession was broken on two occasions held to raise only fact question.**

In action in trespass to try title, in which defendants claimed under five-year limitation, plaintiffs' contention that defendants' possession was broken on two occasions, so that they did not have five years' continuous possession, *held* to raise only fact question.

**2. Adverse possession ⬤⟐57—Evidence held to support conclusion that defendants were entitled to land under five years' adverse possession.**

In action of trespass to try title, evidence *held* to support court's conclusion that defendants were entitled to land by virtue of five years' continuous hostile possession.

**3. Tenancy in common ⬤⟐15(7, 8)—Cotenant's registration of deed conveying entire tract to him is notice to other cotenant that he claims entire tract adversely.**

Registration of deed by one cotenant, which by its terms conveys to him entire tract of land, is notice as matter of law to the other cotenant that he is claiming entire tract adversely.

**4. Tenancy in common ⬤⟐15(1)—Cotenant, recording deed conveying entire tract to him, may obtain title by adverse possession against other cotenant.**

Cotenant, after recording deed which by its terms conveyed entire tract to him, and keeping continuous hostile possession for stat-

---

⬤⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

utory period, may acquire limitation title as against the other cotenant.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Action by J. P. Little and others against Martin Wagner and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

E. E. Easterling, of Beaumont, for appellants.

W. R. Blain and J. B. Synnott, both of Beaumont, for appellees.

WALKER, J. This was a suit in trespass to try title by plaintiffs in error, referred to here as appellants, against defendants in error, referred to as appellees, involving a one-half undivided interest in and to 5½ acres of land in the city of Nederland, Jefferson county, Texas. Appellants owned the record title, but appellees, upon a trial to the court without a jury, were awarded judgment on their pleas of five years' limitation against all the appellants, except two minors, who were given judgment for their proportional interest on their pleas of minority. The trial court supported its judgment with conclusions of law and fact, which appellants challenge as being without support.

Without quoting the evidence, we overrule their proposition that the court erred in finding that the taxes had been paid regularly each year from 1918 to 1924, inclusive, and before delinquency. It appears to us that the record shows without controversy that the taxes were so paid.

[1, 2] Appellants concede that appellee held the land under a good, substantial, and sufficient fence from the middle of December, 1917, to about January 1, 1925, and claimed the land during all that time, and were in hostile possession, use, and enjoyment during all that time, except they say that the possession of the appellees was broken from January 1, 1919, to some time in June of that year, and for about the same length of time in 1923; wherefore they say, because of this break in appellees' possession, they did not have five years' continuous possession within the spirit of our limitation statutes, as defined and applied by the Supreme Court of this state in Taylor v. Dunn, 108 Tex. 337, 193 S. W. 663. On a careful review of the entire statement of facts, we believe that appellants' proposition raises only an issue of fact, resolved against them by the trial court. The facts were as follows:

By deed dated August 20, 1917, and duly recorded in the deed records of Jefferson county on August 30, 1917, C. R. Hoops conveyed the land in controversy to Hal G. Land. The deed purported to convey all the interest in the land, and not an undivided interest. By deed dated June 9, 1919, and filed for record in the deed records of Jefferson county, Texas, on June 27, 1919, Hal G. Land conveyed all the land to Martin Wagner. Subsequently Martin Wagner entered into a contract of sale to a third party, who in turn contracted to sell the land to J. H. Peterson. It was conceded that George Smith, holding for Hal G. Land, went into possession of the land in controversy on December 17, 1917. Appellants say that under the uncontradicted evidence Smith surrendered his possession about January 1, 1919. Smith so testified more than once in his testimony, but construed as a whole it does not follow as a matter of law from what he said that he surrendered possession on January 1, 1919. He testified further:

"I went on that place on the 17th of December, 1917, and I moved off on the 17th of December, 1919. * * * I was on that land more than one year. I was on it nearly two years. * * * I just rented it, and used it nearly two years, and turned it back."

J. H. Peterson testified that he rented the land from Martin Wagner for the years 1919, 1920, and 1921, but did not know the exact date of his entry; that he went into possession under his lease, and held the land in his exclusive possession, pasturing his cattle thereon continuously, from the date he entered until January 1, 1922, and that when he left Sam Collins immediately followed him in possession. He said that Sam Collins remained in possession all of 1922 and part of 1923; that, some time after Collins abandoned possession, Brown and Dunn entered into possession of the land under contract with Martin Wagner, and retained possession during all of 1924 and most of 1925, openly cultivating the same in crops suitable for that character of soil. He further testified that he re-rented the property from Martin Wagner after Collins abandoned it. We think his testimony, when construed as a whole, raises the issue that there was no substantial break between Collins' possession and the repossession by Peterson, and that there was no break between Peterson's possession, and Brown and Dunn's, but in fairness to all the parties we quote as follows from the testimony of Peterson on this issue:

"Yes, sir; in 1918 Mr. Smith farmed the land and used it. In 1919 I leased the land and pastured my cattle in there; in 1920, 1921, and 1922 I pastured the land with my cattle. I did not farm any of that land during the time I had it. During 1919, 1920, 1921, and 1922 there was no part of that land farmed. There was no part of that land in cultivation during those years. The whole 35½ acres was just laying there in a pasture and was uncultivated. During the period of time that I had it, it was largely a pasture, and I used it for my cattle to graze on. I merely had it to let my cattle eat the grass out of the pasture. I turned the pasture back in 1923; that is, I turned it back in 1922, and

the next person that took charge had it for the year 1923. Mr. Collins had that place during the years 1922 and 1923. He had it during 1922 and 1923. The way he had it during 1922 and 1923 was that I used it up until 1922, and then he took charge of it then and used it from 1922 and 1923. I had that place and used it until the first part of January, 1922. I don't know exactly how long it was after the first part of January, 1922, before Mr. Collins came into possession of that place. I don't think that it was in May of 1922 that Mr. Collins went into possession of that place, after I turned it back. He took possession of the place along about the first part of January, 1922. He went into possession of that place immediately after I left there. During the time I had the place I used it to pasture my cattle on. Mr. Collins was in possession of the place during 1923 also. It was during the year 1923 that Mr. Collins quit out there, and sold out, and went some place. I think he went on the other side of Nederland; to be exact, I don't know where he went. During the balance of the year—that is, the remaining part of the year—I got the privilege of putting my cattle back in there. I left my cattle graze in there. I got the privilege from Mr. Wagner to put my cattle in there. I pastured it during the remaining part of that year, I believe. I used it after Mr. Collins left there, for a while. I used it the part of that year that Mr. Collins didn't use it. I did not pay any rent on the place for the remaining part of the year I used it. I used it to graze my cattle on; it was not in cultivation at that time; it was good grazing land at that time. It was not in cultivation at that time; no, sir. I used that land the remaining part of 1923 that Mr. Collins didn't use it, and it was along about the first part of 1924 that I turned that land back. It was along close to January 1, 1924, that I turned it back. It was along about January 1, 1924, that Brown and Dunn came in possession of that place. They farmed it during that year; they planted the place in watermelons and muskmelons. They plowed it up and farmed it. They did not put the whole thing in cultivation that year; that is, they didn't plant it right up against my fence; they didn't plant it right up against my fence, because the chickens would eat it up. I did not turn the place back to Mr. Collins in 1923. Mr. Collins went on the place and used it, but I didn't turn it over to him. I suppose he made his lease with the owners of the place. As I stated heretofore,

Dunn and Brown took possession of the place in 1924. I don't know exactly what month it was that Mr. Collins left the place; all I know is it was in 1923. I couldn't tell you exactly what month it was that I went and asked Mr. Wagner for the privilege of putting my cattle on that place. It was probably some three or four months before the end of 1923 that I asked Mr. Wagner for the privilege of turning my cattle in on that land."

The facts and circumstances so detailed we believe support the court's conclusion of five years' continuous hostile possession. The circumstances of this case bring it within the rule announced in Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265.

[3, 4] Appellants' ancestor had the record title to an undivided one-half interest in the land in controversy. Hoops, owning the other half, sold and conveyed all the land to Land, as stated supra, as if he were the sole owner thereof. Appellants were nonresidents of the state, and had no notice of the hostile claim of appellees, except such as followed from their possession and the record of the deed from Hoops. In taking the deed from Hoops to all the land, it was the express purpose of appellees to perfect in themselves a limitation title to appellants' interest. Appellants say they could do this only by giving them actual notice of their intention to repudiate the cotenancy and to hold and claim all the land as their own. This is not the law. The registration of a deed by one cotenant, which by its terms conveys to him the entire tract of land, is notice as a matter of law to the other cotenant that he is claiming the entire tract of land adversely to him; and when the grantee under such a deed holds adverse possession of the land so conveyed of such unequivocal notoriety that the other cotenant will be presumed to have notice thereof, as was done here, and such possession continues for the limitation period, it will mature the limitation title. Clayton v. Humble Oil & Refining Co. (Tex. Civ. App.) 291 S. W. 597.

The trial court's conclusions of law and fact have full support in the record. The judgment is therefore in all things affirmed.