## JEFFERSON COUNTY DRAINAGE DIST. NO. 6 v. SOUTHWELL et al.
### No. 2007.

Court of Civil Appeals of Texas. Beaumont.
Nov. 13, 1930.

Rehearing Denied Dec. 3, 1930.

Todd & Pipkin and Jack M. Moore, all of Beaumont, for appellant.

W. D. Gordon, of Beaumont, for appellees.

WALKER, J.

This suit was instituted by appellant against appellees Judge and Mrs. W. D. Gordon and W. D. Southwell, to restrain them from building on the Gordon property a brick and concrete dam across its drainage ditch. The lower court refused a temporary injunction. An appeal was duly perfected from that order by appellant to this court, but pending the appeal appellees finished the construction of the dam. The questions thus presented having become moot, this court dismissed the appeal. For opinion see Jefferson County Drainage District No. 6 v. Southwell (Tex. Civ. App.) 2 S.W.(2d) 359. The case is before us now on appeal from final judgment on the merits, denying appellant all injunctive relief. In support of its judgment, on motion of appellant, the trial court duly filed the following conclusions of fact and law.

### Findings of Fact

"1st. I find that many years ago, to-wit about 1915, before the organization of the plaintiff Drainage District No. 6, the defendants, Mr. and Mrs. W. D. Gordon purchased out of the H. Williamson Headright League Grant of 1834, approximately seven (7) acres of land lying to the north of the Houston-Beaumont Highway, and are the fee simple owners now, and have been since the purchase thereof.

"2nd. I find that for a distance of approximately one thousand (1000) feet running from the railroad right-of-way diagonally in the southeastern direction through said property was a natural drain which constituted the head-waters of Hillebrandt's Bayou, the beginning of this natural drain was a short distance, some two or three miles, north of the defendant's property.

"3rd. Prior to 1921, at the organization of the plaintiff Drainage District, this small bayou in ordinary times did not contain water, except for a short distance above the defendant's land, where there were occasional holes and depressions in which water accumulated in small quantities, which became stagnant. That was especially the condition on the defendant's property until some ten or twelve years before this suit was filed, when the defendants, Mr. and Mrs. Gordon (the ti-

tle being in the latter), at considerable expense to themselves, widened and deepened the natural cut through their land so as to make a kind of lake of water running the full length of their property. This operation deepened the natural drain something like three (3) feet below what is now the theoretical bottom level of the drainage system in that territory.

"4th. Immediately below the Gordon property there were also a succession of holes in the bayou which had stagnant water in ordinary seasons, prior to the drainage operations. This extended for a short distance south, and became merged in a low flat marsh through which these succession of holes with a small connecting natural ditch or channel extended until it reached a distance of about four miles, when the bayou, from that point on to its mouth, was a consistent stream of water, becoming larger as it approached its outlet toward the Gulf.

"5th. The organization of the plaintiff Drainage District No. 6, about the year 1921, was in pursuance of a bond issue which had been voted in that territory resulting in work being done by dredging out the main channel of Hillebrandt's Bayou aforesaid north of the defendant's property and connecting there with artificial ditches for the purpose of draining water into this main channel. This was dug out and deepened and improved for approximately two miles above the Defendant's property and down to it, but no dredging was done on defendants' property.

"Passing defendants' property to the south, the drainage operations were continued and the bayou deepened and widened for several miles down to its connection with the main body of water aforesaid.

"6th. At no time did the plaintiff Drainage District obtain from the defendants any right-of-way or privileges over and across their land.

"7th. The result of the drainage operations aforesaid was to cut a deep and wide channel, with banks some eight feet or more from the bottom of the ditch excavated to the level of the land at the top, and some forty or fifty feet wide from bank to bank at the top.

"8th. Shortly before the filing of this suit, in 1927, the defendants, Mr. and Mrs. W. D. Gordon employed the defendant W. D. Southwell to construct a permanent brick and concrete dam at the south end of their property, which had been excavated by them there for the purpose of impounding the water in dry times on said property. Said Southwell was instructed to take the levels and build said dam only sufficiently high to impound the water to the approximate depth which it had been excavated to hold, but not to raise it to such height as would interfere with the adequate and complete drainage of the waters in flood times over and above the dam.

"Accordingly, defendant Southwell designed the top of the dam to extend approximately three feet above the drainage level provided by the engineer of the plaintiff Drainage District.

"9th. Soon after he began the work of constructing the dam, the engineer of the plaintiff went and took the levels with defendant Southwell, and informed him that the Drainage District No. 6 would resist the building of said dam beyond a certain level which he established, and which was approximately nine inches lower than the top of the proposed dam. Said engineer drove a stake indicating the heighth to which such dam would be permitted and beyond which it would be contested by the Plaintiff Drainage District.

"10th. The plans of said defendants, as aforesaid, were then carried out and the dam constructed so that the top thereof was approximately three feet above the engineers level for the drainage ditch and approximately nine inches above the level fixed by plaintiff's engineer.

"11th. Thereupon this suit was filed, and the plaintiff Drainage District No. 6, endeavored to secure a temporary restraining order and injunction which it asked to be made permanent, against the completion of said dam then nearing completion, and asking the relief stated in its original petition in this case.

"A full hearing was had by the court on said application and injunctive relief denied, and soon thereafter the dam was completed in its present condition.

"12th. The facts adduced upon the trial of that proceeding consisted of expert testimony of engineers, pro and con, as to whether the proposed dam, when completed, would result in an interference with the drainage operations, and as to the right of the plaintiff Drainage District to injunctive relief, based upon its cause of action and the facts adduced.

"Upon these facts, on full hearing, this court held for the defendants, denying the plaintiff the relief sought, and the case was appealed to the Court of Civil Appeals and there dismissed.

"13th. The facts adduced upon the hearing for temporary injunction and for mandatory relief, ordering the removal of the dam, (though theoretical, since the condition had not been put to the actual practical test,) were held by the court to be insufficient to entitle the plaintiff Drainage District to relief as prayed for. And upon the present hearing the same conditions were established by the evidence, except that on this hearing the proof as to the actual condition resulting from the construction of the dam sustains the theory of expert testimony in the other hearing by establishing that the construction of the dam has in no wise interfered with the complete and adequate drainage of the water

through that system; and that apart from the impounding of the small body of water resulting from the building of the dam, the flood waters flow as freely and uninterruptedly through there as they ever did.

"I find, therefore, as a fact, that the construction of this dam has in no wise injured the drainage system or interfered with the purposes for which it was organized and for which it is functioning.

"14th. I find also that although this drainage ditch serves many thousands of acres of land above the controverted place, none of the land has been interfered with as to drainage by the construction of this dam, and not a single land owner in all that territory has uttered a complaint or made any protest on account of the construction of the dam in question.

"On the contrary, the evidence establishes that it has not only improved the defendants' property and relieved it of stagnant holes and pools which existed before its construction, but has furnished a body of fresh water, improving the general appearance and condition of the properties including and adjoining it, and has received the approbation and approval of the land owners most intimately and directly concerned.

"15th. I find also that it has been the settled policy of those in charge of said Drainage District No. 6, to permit some thirty or forty temporary dams to be constructed at various and sundry portions of said drainage district, made of sacks of dirt and sand placed across said ditch or district for the purpose of enabling land owners, through whose land said drainage system runs, to impound quantities of water in said ditches, and that these have been permitted to extend approximately two and one-half (2½ ft) feet above the general drainage ditch level and that these temporary obstructions are nearly always wrecked and destroyed by flood waters which periodically accumulate and flow through said drainage system during heavy rains."

To the trial court's conclusions of fact, we add the following, taken from appellants' brief:

"The dam backed dead water up the bayou for 5100 feet, or 4100 feet above the defendant's back line."

### Conclusions of Law

"I conclude as a matter of law:

"1st. That the construction of said dam by the defendants was without injury to the plaintiff Drainage District No. 6, in any respect, and that therefore, apart from any other question, it is not entitled to any of the relief asked for in this suit.

"2nd. I conclude as a matter of law that the defendants were within their legal and equitable rights, they being the unconditional owners of the property improved by them, in the construction of said dam, and that these legal and equitable rights, not being an invasion or injury to the rights of others, cannot be interfered with in the absence of proof establishing that the said defendants have used their property in such a way as to injure others.

"3rd. I conclude that all relief prayed for by the plaintiff Drainage District No. 6, having no basis in law or in equity to sustain the complaint upon which prayer for such relief is predicated, should be, and the same is, denied."

Against these conclusions appellants advance the following propositions of law:

"First. It being undisputed that the land claimed by Defendant was originally granted by the Mexican Government, the said law in force at the time of the grant, retained in the public the title to the bed and stream of Hillebrandt's Bayou, so that the public at all times had a right to use the same for drainage purposes and to maintain it for said use irrespective of any permission from the defendants.

"Second. Hillebrandt's Bayou, at the point of the dam, was, under the uncontroverted evidence, fifty feet wide from bank to bank, and had a spill way of forty feet, when under the Texas Statute any stream thirty feet in width is a navigable stream, and the stream at place the dam was located was in law a navigable stream whether so in fact or not.

"Third. The defendants were prohibited by direct and positive Statutory Penal Enactment, from placing the dam in any water course improved or used as a part of the drainage system of the Plaintiff District.

"Fourth. The plaintiffs were required by the Statute fixing their duties, to maintain drainage in Hillebrandt's Bayou, and the bringing of this injunction was not only proper but necessary to the performance of their duties.

"Fifth. The Defendants were prohibited by the common law, irrespective of the Statute, from backing water upon the lands higher up in the stream, as was done under the uncontroverted evidence, in this case.

"Sixth. An unlawful dam, such as that constructed by the Defendants, constitutes a nuisance which may be and should be abated either with or without the aid of Law.

"Seventh. The public, having the right to drain through Hillebrandt's Bayou, no permit, right or condemnation from the Defendants was necessary for the drainage district either to use or improve Hillebrandt's Bayou for the drainage of the lands naturally draining into the same.

"Eighth. The dam in question being erected and maintained in open violation of both common and Statutory Law, its construction and maintenance cannot be justified upon any grounds of beauty or aesthetic environment.

"Ninth. The dam being illegal, its removal may be compelled irrespective of the degree of injury suffered by the District, or individuals draining through the same.

"Tenth. The fact, if true, that farmers and stock men in other parts of the County had on occasions, without injury to the ditches, constructed temporary barriers for the purpose of holding drinking water for their stock, constitutes no defense or excuse for the Defendants' action in permanently blocking the main channel in Hillebrandt's Bayou.

"Eleventh. The drainage Engineer had no authority under the law, to give a permit to violate the Statute, and the common law rights of the parties, nor to waive such violation, and if such permit had been given it would constitute absolutely no defense for Defendants' acts.

"Twelfth. The dam in question having been openly constructed in the face of an injunction, and over the protest of the Commissioners of the District, a mandatory injunction was and is a correct and proper remedy and should have been given as prayed for."

An examination of these propositions shows that, while appellant has properly challenged the trial court's conclusions of law, no attack whatever has been made against the conclusions of fact.

### Opinion.

Since the conclusions of fact are not challenged by propositions duly supported by proper assignments of error, they cannot be reviewed by us. Appellant assigned error against the conclusions of fact, but brought forward no propositions asserting error in the respects assigned. The assignments of error standing alone present nothing for review.

We think the judgment of the lower court should be sustained upon the following facts taken from the thirteenth conclusion of fact: "The construction of the dam has in no wise interfered with the complete and adequate drainage of the water through that system; and that apart from the impounding of the small body of water resulting from the building of the dam the flood waters flow as freely and uninterruptedly through here as they ever did." Since the construction of the dam in no wise interfered with the complete and adequate drainage of water through Hillebrandt bayou, appellant was entitled to no relief in equity.

Appellant asserts that this conclusion is erroneous, and that the judgment must be reversed for the following reasons:

First. By the first proposition it is asserted that the title to the bed of Hillebrandt bayou, which was used as the drainage ditch, belongs to the public, and that the public at all times has a right to use the bayou for drainage purposes and to maintain it for that use, irrespective of any permission from appellant. As presented by this appeal the title to the bed of Hillebrandt bayou is an immaterial issue, because, as found by the thirteenth conclusion of fact copied above, appellees have in no manner interfered with appellant's right to use this stream and its duty to maintain the same for drainage purposes.

Second. On the second proposition, if it be conceded that Hillebrandt bayou is a navigable stream, appellant has no right nor duty to protect it as such. Its right in the stream, if any it has, is limited to protecting and preserving it for drainage purposes.

Third. Citing article 1356, Penal Code, which is as follows: "Whoever shall wilfully fill up, cut, injure, destroy or in any manner impair the usefulness of any canal, drain, ditch or water course or other work constructed, repaired or improved under the provisions of the law providing for drainage districts for the purpose of drainage and protection from an overflow of water, shall be fined not exceeding one hundred dollars or be confined in jail not exceeding two months," appellant, by its third proposition, asserts that appellees were prohibited by the provisions of this article from constructing the dam across the bayou. Appellant does not correctly construe this article. The things prohibited thereby and made crimes are those things which "impair the usefulness" of drainage ditches. Appellees have in no way violated the provisions of this article, as affirmatively appears from the court's conclusions of fact.

Fourth. No injury is shown under the fourth proposition. If it is the duty of appellant to maintain Hillebrandt bayou for drainage purposes, appellees have in no way trespassed upon its rights nor done anything that invokes this duty.

Fifth. Whatever may be the rights of the riparian owners above appellees' dam to complain of the construction of the dam, they have not asserted such rights in this suit; that is, they are in no way parties hereto. It cannot be maintained that appellant has the right to sue to protect the rights of riparian owners, as such. It is only such rights that are invoked by this proposition.

Sixth. If, as appellant asserts by its sixth proposition, the construction of this dam constitutes a nuisance, it can be abated as such only upon the prayer of those injured thereby, either in fact or as a presumption of law. Appellant has suffered no such injury.

Seventh. The right of the public to drain through Hillebrandt bayou has been in no way impaired by the construction of this dam, as the trial court affirmatively found, and, therefore, the seventh proposition does not show error.

■ Eighth. Appellant correctly asserts that the construction and maintenance of the dam cannot be justified "upon any grounds of beauty or æsthetic environment." Since we are not invoking, in support of the judgment of the lower court, its conclusions of fact on this issue, this proposition does not show error.

Ninth. In this case the legality of the construction and maintenance of the dam must be determined by the issues between appellant and appellees. From what we have said appellant has suffered no wrong, and, therefore, can have no relief. The ninth proposition must therefore be overruled.

Tenth. The tenth and eleventh propositions attack fact conclusions not necessary for the support of the judgment, and are therefore overruled.

■ Eleventh. It is true, as asserted by the twelfth proposition, that the dam was constructed openly and over the protest of appellant, but that does not entitle it to a mandatory injunction requiring the removal of the dam. On the facts found appellees had the right to construct and maintain the dam over appellant's objections.

Alleging that all the issues on this appeal were adjudicated against appellant on the former appeal, appellees filed below their plea of res adjudicata, and complain here that the trial court erred in overruling it. In view of the affirmance of the judgment on other grounds, we pretermit a discussion of this issue.

For the reasons stated, the judgment of the trial court is in all things affirmed.

### On Rehearing.

On the motion of appellant we make the following additional conclusions of fact:

(a) "That appellant excepted to the 13th finding of fact in the 14th assignment of error, shown on pages 68 and 69 of the brief."

(b) With the qualification that appellant had no proposition based upon the fourteenth assignment of error attacking the thirteenth conclusion of fact, and that the fourteenth assignment of error was referred to only by way of argument in support of the ninth and twelfth propositions, the second request is granted: "That the appellant briefed the 14th assignment in connection with the 9th and 12th propositions, the first asserting the right to an injunction irrespective of the degree of injury, and the latter one asserting the right to injunction by reason of the dam having been constructed in the ditch over the protest of the commissioners."

(c) In its argument in support of the ninth proposition appellant made the following statement: "We submit that any finding that same was without injury is contrary to the undisputed evidence and necessarily against the great weight and preponderance of the evidence."

(d) "It further appears from the record that no riparian owner above the dam testified that he was not injured by the dam" and Judge Gordon testified "that none of said owners had complained to him of the dam, and that some of them had complimented him." We decline to make the conclusion that there was no "testimony as to the effect of the dam upon the riparian owners or upon the drainage above the dam," as requested by appellant. The testimony of Mr. George White, now deceased, a civil engineer of twenty-six years' experience in this county, given on the former trial, was reproduced on this trial and was sufficient, even had the thirteenth conclusion of fact been attacked by a proposition, as required by the rules of briefing, to support that conclusion. We do not review this testimony, because without a proposition the issue is not before us.

The motion for rehearing is overruled.