**JASPER STATE BANK v. BRASWELL et al.**

No. 3116.

Court of Civil Appeals of Texas. Beaumont.

May 18, 1937.

Rehearing Denied June 30, 1937.

. Richardson & Lanier, of Jasper, and Williams, Lee, Sears & Kennerly, of Houston, for appellant.

· Synnott & Smith, of Jasper, for appellees.

· WALKER, Chief Justice.

On the 8th day of June, 1932, the partnership of J. M. Orton & Son and its individual members, J. M. Orton, Robert Orton, and Kern L. Braswell, doing a drug business in the city of Jasper, Jasper county, were adjudged bankrupts by the District Court of the United States in and for the Eastern District of Texas, and J. W. Shotwell was duly appointed trustee and qualified and administered the bankrupt estate, as such trustee. On the 20th day of June, 1932, Jasper State Bank filed in that bankrupt proceeding its claim against the bankrupts, on that day amounting to $18,673.30, evidenced by four promissory notes as follows: First note dated December 26, 1930, due six months after date for $6,500, with interest at 10 per cent. from maturity, executed by J. M. Orton, Robert Orton, Kern L. Braswell, and Mrs. A. D. Wagley; second note dated January 21, 1931, for $1,725, due six months after date, bearing 10 per cent. interest from maturity and executed by the same parties who executed note No. 1; third note dated February 18, 1931, for $1,450, due four months after date, bearing interest at 10 per cent. from maturity, executed by the same parties who executed notes 1 and 2; fourth note dated April 4, 1931, for $7,900, due six months after date, interest at 10 per cent. from maturity, executed by the same parties who executed notes 1, 2, and 3, and also by Mrs. Ethel Braswell, wife of Kern L. Braswell, who subsequently became a party to all the notes. Though Mrs. Braswell was a party to all four notes, she was in no way a party to the bankrupt proceedings. These four notes were secured as follows: (a) By deed of trust dated the 7th day of July, 1931, duly filed for record in Swisher county, wherein bankrupts Robert Orton and Kern L. Braswell, joined by his wife, Mrs. Ethel Braswell, conveyed to L. J. Fortenberry, trustee for Jasper State Bank, the following described land: "Section No. 59, Block B-2, Certificate 1/802, original grantee Beaty, Seale & Forwood, patented to Emily Smyth October 27, 1880, by patent No. 553, Vol. 2, Abst. No. 119, in Swisher County, Texas, and being the same land described as first tract in a certain deed executed by A. D. Wagley to the grantors herein July 1931, to which deed reference is here made for description as well as all other purposes," hereinafter referred to as the Swisher County land. This tract was owned one-half by Robert Orton and one-half by Mrs. Ethel Braswell, who held under deed from Mrs. A. D. Wagley on consideration of $10 and the assumption by the grantees of her liability on the four above-described notes. (b) By deed of trust dated the 4th day of April, 1931, duly recorded in Jasper county, wherein the bankrupts J. M. Orton, Robert Orton, and Kern L. Braswell, joined by his wife, Mrs. Ethel Braswell, conveyed to L. J. Fortenberry, trustee for Jasper State Bank, the following described property:

" * * * lying and being in the County of Jasper and State of Texas, viz:

"Being a part of Lot No. 33 of the Town of Jasper, according to the original map thereof, recorded in Vol. 3, page 302 of the Deed Records of Jasper County, Texas, situated on the North side of the Court house square and bounded as follows:

"Beginning on the South side of said Lot No. 33 77 ft. West of the South East corner thereof, being 22 ft. west of the South west corner of a part of said lot sold by J. M. Orton to W. E. Lanier. Thence North 150 ft. Thence West 46 ft. Thence South 150 ft. to the south line of said lot; Thence East 46 ft. to the place of beginning,"

hereinafter referred to as the city of Jasper property. The two Ortons owned an undivided seven-eighths interest in this property and Mrs. Braswell owned the remaining one-eighth interest. The claim of the Jasper State Bank was duly approved by the federal court, both as to amount and as to security.

On the 3d day of October, 1925, the three bankrupts, joined by Mrs. Ethel Braswell, conveyed the city of Jasper property to T.

W. Bardell, trustee, to secure Southwestern Life Insurance Company in the payment of a note executed to it by all four of the makers of the deed of trust dated the 3d day of October, 1925, with interest at 7 per cent. per annum from maturity; this claim was duly filed in the Orton & Son bankruptcy proceedings and on the 21st day of June, 1932, was allowed in the sum of $6,600, together with its security. In due course of administration of the bankrupt estate, under orders of the federal court regularly made and entered, J. W. Shotwell, as trustee, sold and by separate deeds dated the 30th day of August, 1932, conveyed the two tracts of land as above described to Jasper State Bank, on the following consideration: (a) For the Swisher County land $6,400, to be credited by the Jasper State Bank on its secured claim, represented by the four notes above described; (b) for the city of Jasper property $5,000, to be credited on the four notes, and the further consideration that the Jasper State Bank assume and pay the claim of the Southwestern Life Insurance Company; as a further consideration it was recited in the order that neither Jasper State Bank nor Southwestern Life Insurance Company should make any further claim against the bankrupt estate. The Jasper State Bank duly paid to the Southwestern Life Insurance Company the full amount of its claim, and on the 11th day of January, 1934, the Southwestern Life Insurance Company executed a formal release of its lien against the city of Jasper property. When the Jasper State Bank purchased the two tracts of land at the bankrupt sale, it knew in fact of the note and lien in favor of Southwestern Life Insurance Company and voluntarily accepted the deed from the trustee on the recited consideration that it would pay the notes to the Southwestern Life Insurance Company. Immediately after the execution to it of the two deeds to the two tracts of land by the trustee in bankruptcy, the Jasper State Bank took possession of both tracts of land and was continuously in possession from that date, claiming to own both tracts of land in fee simple, basing its claim on the deeds executed to it by the trustee in bankruptcy.

On the 23d of May, 1936, Mrs. Ethel Braswell, joined by her husband, Kern L. Braswell, sued the Jasper State Bank in trespass to try title for an undivided one-fourth interest in the city of Jasper property and an undivided one-half interest in the Swisher county property. Jasper State Bank answered by pleading general and special demurrers, general denial, and specially the facts as detailed above, and further that it took possession under the two deeds executed to it by the trustee in bankruptcy; that it paid the taxes against the land; that it had made improvements thereon and had collected certain rents, these items being itemized in the plea. On the facts pleaded it prayed for title to both tracts of land in fee simple or, in the alternative, that it be declared to be a mortgagee in possession as against Mrs. Ethel Braswell and her husband, with equitable relief under that plea. Mrs. Braswell replied by supplemental petition, pleading general and special exceptions to the answer and cross-action of the Jasper State Bank, general denial, limitation, etc.

On trial to the court without a jury on the 17th day of August, 1936, judgment was entered in favor of Mrs. Braswell against the Jasper State Bank, denying its claim to be mortgagee in possession and awarding Mrs. Braswell title and possession to an undivided one-eighth interest in the city of Jasper property and to an undivided one-half interest in the Swisher county property, and awarding to her an accounting against the Jasper State Bank for the rents and revenues collected by it on the two pieces of property. In support of the judgment fact conclusions were filed finding the facts as detailed above, and the following additional facts: The last of the four notes due the Jasper State Bank matured on October 4, 1931, and since this suit was filed on the 23d of May, 1936, all four notes were barred by limitation at the time the suit was filed; at no time after the institution of the bankruptcy proceedings did the Jasper State Bank recognize or deal with Mrs. Ethel Braswell as its mortgagor, nor did it recognize that she owned any interest in the two tracts of land; the Jasper State Bank did not go into possession of the two tracts of land or any part thereof with the consent or under any agreement with Mrs. Braswell, nor as her mortgagee, but it "went into possession" solely as owner under the deed from the trustee in bankruptcy; the Jasper State Bank did not occupy the land "in recognition or by virtue of any mortgage, deed of trust or claim any right under a mortgage or deed of trust" (as against Mrs. Braswell) but its entire possession was by virtue of the bankruptcy proceedings against J. M. Orton & Sons and the individual mem-

bers of the firm, and such title in fee as it obtained by virtue of the deed from the trustee in bankruptcy; the Jasper State Bank never recognized that Mrs. Braswell was the owner of any interest in the two tracts of land; that it was her mortgagee, or that its possession as to her was for the purpose of collecting its debt out of her interest in the land.

On the undisputed facts we find, in addition to the facts found by the trial court, that the Jasper State Bank took possession of the two tracts of land in the belief that it acquired a fee-simple title to all interest in the land under its deed from the trustee in bankruptcy, and at a time when none of its notes was barred by limitation it held possession under that belief and with the knowledge of appellees continued in possession, collected the rent, paid the taxes, and made the improvements in controversy in this suit.

From the judgment entered against the Jasper State Bank it has prosecuted its appeal to this court.

### Opinion.

As appellant has no assignment against the conclusions of fact of the lower court, they must be accepted as having support in the evidence. On the conclusions of fact appellant makes the proposition that it was in peaceful and lawful possession of the land in controversy and, being appellees' mortgagee, had the rights of "a mortgagee in lawful possession," the right to remain in possession until Mrs. Braswell paid it her pro rata share of the indebtedness against the property, less her pro rata share of the net profits of appellant's occupancy.

That a mortgagee in lawful possession of the mortgaged premises can hold his possession until his debt is paid is the unquestioned law of this state. Browne v. King, 111 Tex. 330, 235 S.W. 522; 7 Tex. Law Review, 170; 41 C.J. p. 613, par. 581; Rodriguez v. Haynes, 76 Tex. 225, 13 S.W. 296; Howard v. North, 5 Tex. 290, 51 Am.Dec. 769; R. B. Hannay, Adm'r v. Louisa L. Thompson, 14 Tex. 142; Morrow v. Morgan, 48 Tex. 304; Burgess v. Samuel H. Millican, 50, Tex. 397; French v. Grenet, 57 Tex. 273; Duke v. Reed, 64 Tex. 705; Northcraft v. Oliver, 74 Tex. 162, 11 S.W. 1121; Baker v. Collins, 4 Tex.Civ.App. 520, 23 S.W. 493; Hays v. Tilson, 18 Tex.Civ.App. 610, 45 SW. 479; Vanderwolk v. Matthaei (Tex.Civ.App.) 167 S.W. 304; Elliott v. C. C. Slaughter

Co. (Tex.Civ.App.) 236 S.W. 1114; Majors v. Strickland (Tex.Civ.App.) 6 S.W.(2d) 133; Thomason v. Wiebusch (Tex.Civ. App.) 89 S.W.(2d) 452. Though his debt is barred by limitation, he can hold possession until it is paid.

Appellees define "a mortgagee in lawful possession" as "one in possession by consent of the mortgagor, or under circumstances calling to his aid principles of equity to avoid unconscionable wrong," citing principally Galloway v. Kerr (Tex. Civ.App.) 63 S.W. 180, and Williams v. Connor Bros. (Tex.Civ.App.) 83 S.W.(2d) 692 (writ granted). In the Texas Law Review cited above, it is said: "In the states following the lien theory of mortgages, the courts are divided as to the character of entry necessary to acquire the status of a mortgagee in possession. In one group, it must be with the consent of the mortgagor, express or implied. Herrmann v. Cabinet Land Co., 217 N.Y. 526, 112 N.E. 476 (1916); Jones v. Rigby, 41 Minn. 530, 43 N.W. 390 (1899); McClory v. Ricks, 11 N.D. 38, 88 N.W. 1042 (1902). A second holding extends this rule to include peaceable, good faith entry under 'color of law', as under a void foreclosure. Pettit v. Louis, 88 Neb. 496, 129 N.W. 1005 [34 L.R.A.(N.S.) 356] (1911); Cameron v. Ah Quong, 175 Cal. 377, 165 P. 961 (1917); Caro v. Wollenberg, 68 Or. 420, 136 P. 866 (1913). In the third group, it is not essential to the status of mortgagee in possession that the possession be taken under the mortgage nor with the consent of the mortgagor. It is enough that the possession be peaceably acquired. Jaggar v. Plunkett, 81 Kan. 565, 106 P. 280, 25 L.R.A.(N.S.) 935 (1910); Stouffer v. Harlan, 68 Kan. 135, 74 P. 610, 64 L.R.A. 320, 104 Am.St.Rep. 396 (1903)." Appellant insists that the law of "the third group" is the law of Texas. The facts of this case do not invoke appellant's proposition, nor appellees' definition, nor any one of the three classifications formulated by the Texas Law Review.

To be a mortgagee in lawful possession the mortgagee must hold under his mortgage, in recognition of the rights of his mortgagor. Not only must he be ready and willing at all times to render an accounting to his mortgagor of the profits of his possession, but his claim and possession must be of such a nature that his mortgagor can compel an accounting, and that without relation to the bar of the statutes

of limitation. A mortgagee in lawful possession holds as trustee for his mortgagor, both as to his claim and possession of the property, and as to the profits of his possession, and limitation in his favor can run only after a repudiation by him of his original entry with notice to his mortgagor of his hostile claim. Appellant's possession does not fall within this statement of the law. The deeds to it from the trustee in bankruptcy conveyed all the property, every interest in the property. It took possession claiming to own all of the property conveyed by its deeds, every interest in the property. It did not take possession with consent of appellees nor in recognition of its mortgage against appellees, nor did it hold possession under the mortgage nor in recognition of any right in Mrs. Braswell, either as mortgagor or as its joint tenant. Its entry was hostile to the title of Mrs. Braswell and a repudiation of her joint tenancy. For almost five years it claimed to own all the property conveyed by its deed, held exclusive possession in repudiation of the joint tenancy, collected all the revenues, made all the repairs, paid all the taxes and insurance. Under this statement appellant was not in possession as "a mortgagee in lawful possession" but in the character of a limitation claimant who had almost, lacking only a few months, perfected a title under the statute of five years. Little v. Wagner (Tex.Civ.App.) 5 S.W.(2d) 232; Clayton v. Humble Oil & Ref. Co. (Tex.Civ.App.) 291 S.W. 597. Appellees have correctly summarized the facts and law in their brief, from which we quote as follows:

"Appellant was not a mortgagee in possession because: it did not go into possession with Mrs. Braswell's consent; it did not at any time after it got its deed from the trustee in bankruptcy, recognize that it owned only an undivided interest; that Mrs. Braswell owned half of one tract and eighth of the other; that its possession as to her was by reason of a mortgage; and that, when its possession should result in the collection of the part of its debt originally secured by a lien on her interest, it must and would return to her the possession. No, not it. It took a deed from the trustee to all the interests, as if it had foreclosed a lien in the bankrupt court upon all interests. It went into possession claiming to own it all, paying taxes on it all, insuring it all, collecting rents from it all, not offering at any time to account to Mrs. Braswell as to her part, even by giving the mortgage upon her part credit.
* * *

"It had years after it entered into possession in which to foreclose its lien on Mrs. Braswell's interest in the two tracts of land. If it had taken such action she would have been compelled to pay the amount for which her interest was bound * * *. But appellant did not so proceed. It offered to stand upon what it had. If it had been let alone a few months longer, it would have been the owner of it all under the five year statute of limitation; * * * it was in possession under a deed serving as a repudiation of her interest as a tenant in common. It was paying taxes. It was claiming the whole. It was not recognizing her as a part owner and itself a mere mortgagee so far as she was concerned. Certainly it could not so act as to mature its title by limitation to her part, and, when sued a little too early for it to hold the legal title, change its position and claim as the owner of only one half and seven eighths, and that Mrs. Braswell owned the other, and was its mortgagor."

It is our conclusion that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

## On Rehearing.

On rehearing appellant presents the following points:

First. "The facts in this case control its disposition. Findings of fact not supported by evidence, conclusion of law, and discussions of authorities, do not bind appellant or appellees. They are bound by the facts before Your Honors." This proposition does not have support in our jurisprudence. On appeal, the appellant is bound by the fact conclusions of the trial court, unless he has assigned error against these conclusions. Jefferson County Drainage District No. 6 v. Southwell (Tex.Civ.App.) 32 S.W.(2d) 895. Appellant made no attack against the trial court's conclusions of fact brought forward in our original opinion; therefore, it is bound by the court's findings. But it can also be said that every fact found by the court has support in the record.

Second. As the basis of its argument on rehearing, appellant submits the following definition of "a mortgagee lawfully in possession": "The possession of a mortgagee is lawful when taken under

actual title to an interest in the property; under foreclosure or other legal proceedings in some way defective; or when acquired peaceably without stratagem or deceit. The holder of a lien is not 'a mortgagee in possession' when such possession was obtained through some wholly unlawful and wrongful, unconscionable act, such as might be effected by deliberate fraud, by force and arms. But the lienholder is always a mortgagee lawfully in possession when he has the right, either with or without the consent of the debtor, to enter upon the property, such as claiming under a foreclosure in some manner defective (Browne v. King, 111 Tex. 330, 235 S.W. 522); or owning as a tenant in common (Duke v. Reed, 64 Tex. 705); or finding the property vacant peaceably enters (Baker v. Collins, 4 Tex.Civ.App. 520, 23 S.W. 493)." Appellant's definition does not control the facts of this case. The entry of the mortgagee, not under a foreclosure, must be that of a "friend" and not of an "enemy"; he cannot claim *title* adversely to his mortgagor and in repudiation of his rights. Where the mortgagor is compelled to be diligent to keep his mortgagee from perfecting against him a limitation title, the entry is not "lawful" as that term is defined in equity.

 Third. Appellant asserts that it had the right of entry as a tenant in common with appellees. True, appellant was in fact a tenant in common with appellees in all the property in controversy. Appellant had the option to enter and take possession of all the property as a tenant in common, in which event it would have held the possession subject to an accounting with appellees when called upon by them. It also had the option to enter, not as a tenant in common, but as an adverse claimant to all the property, and that option it exercised. That a tenant in common can mature a title by limitation against his cotenants is the unquestioned law of this state. Appellant could not hold as "a mortgagee in possession" until the last day of the five-year limitation period and then the next day assert title by limitation under the limitation statutes, which is the position it takes in this case.

 The court found facts making appellant a limitation claimant to the land, sufficient to mature in it a limitation title at the end of five years. It now says that, though holding under the facts found by the court, it had the rights of a mortgagee

in possession. The cold logic of the law denies that contention. Appellant's relation to this property was a fact question, not a law question resting upon the naked fact that it held against the property an unsatisfied mortgage owed it by appellees. It is no answer to say, as appellant suggests, that it did not plead limitation. Of course, it did not plead limitation because it had not had possession for five years. The determinative issue was not a title by limitation in appellant, not raised either by the pleadings or the proof, but whether appellant held possession as a limitation claimant or as a mortgagee in possession, and that issue the court found against it by unquestioned fact conclusions.

 Fourth. As we understand appellant's motion, it advances the proposition that a limitation claimant, holding a mortgage against the property, cannot mature against his mortgagor a limitation *title* but can hold only—and that without relation to the character of his holding—as a mortgagee in possession. In support of this contention appellant cites Duke v. Reed, 64 Tex. 705 and Browne v. King, 111 Tex. 330, 235 S.W. 522. Neither of these cases is in point on the facts of this case, nor do they support appellant's proposition. In Duke v. Reed the appellants, the Dukes, had been in possession a sufficient length of time to mature title by limitation against the interveners, Nix and Storey, and were adjudged to have limitation title against them. As against their cotenants, the defendants, Mrs. Reed and Mrs. Burleson, appellants claimed adversely as they did against the other defendants, and in repudiation of the relation of cotenancy. But—and this is the point of distinction—because of the marital status of their cotenants, Mrs. Reed and Mrs. Burleson, the Dukes could not mature title against them by limitation; the court said: "No limitation can affect the plaintiffs, Mrs. Burleson and Mrs. Reed, as they have been continuously under coverture from a date previous to the adverse possession of the defendants." Therefore, the law, in order that justice might be done, decreed that the Dukes were mortgagees in possession against their cotenants; otherwise their cotenants would have gained an unconscionable advantage because of their marital status. The holding of that opinion is to the effect that, but for the marital status of Mrs. Reed and Mrs. Burleson, the Dukes would have matured against them a title by limitation, notwithstanding they held against them an unsatisfied mortgage cover-

ing the very property in issue. In Browne v. King, appellant asserts that both the pleadings and the evidence put in issue the statutes of limitation, and that our Supreme Court decreed that Mrs. King's relation to the land in controversy was that of a mortgagee lawfully in possession and not that of a limitation claimant. Writing the opinion, Judge Phillips did not state why the statutes of limitation were not available to Mrs. King. Certainly, it was not his purpose to announce as the law of Texas that, because a deed of trust was in her chain of title, she could not hold adversely to one asserting an adverse interest, burdened with the deed of trust. The foreclosure in her chain of title was irregular and insufficient to invest in her the title asserted by Browne, but as between her and Browne she was in possession under the foreclosure. For some reason not disclosed by the opinion she was not entitled to the benefits of the statutes of limitation—possibly because of the doctrine of Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025. Not having the rights of a limitation claimant, being in peaceful possession under foreclosure, she was given relief as a mortgagee lawfully in possession. As we understand the decisions of our Supreme Court, a mortgagee in possession under color of a foreclosure proceeding, entering under and claiming his possession under the foreclosure, can retain possession until his mortgagor pays his debt.

But in the case at bar, as between appellant and appellees, appellant did not take possession of the land in controversy under its foreclosures, for the simple reason that appellees were not parties to the foreclosure, and by the foreclosure appellant acquired no color of right against them. Were the Ortons appellees in this case, claiming title to the land in repudiation of their foreclosure sale, Browne v. King would be in point and would make appellant "a mortgagee in possession." Had appellant entered as a tenant in common and not as a limitation claimant, Duke v. Reed would be in point, and appellant could have held possession until its. debt was paid.

 Would appellant say it could not, under the law, have matured a limitation title against appellees? Would appellant say that the facts found by the court, if they had continued for five full years, would not have matured a limitation title in its favor against appellees? Having matured a limitation title—that is,

having held the possession under all the conditions of the statute of limitation of five years—would appellant say that the *law* would deny it the benefits of the statute and force it to the relation of a mortgagee lawfully in possession? Under the facts as they existed from the day of its entry, as found by the court, would appellant say that, prior to the expiration of the five-year period of limitation, it could claim the rights and benefits of a mortgagee in possession and, at the end of the five-year period, claim title as a limitation claimant? These questions are answered against appellant by the following proposition from our original opinion, which we believe is an accurate statement of the law: "To be a mortgagee in lawful possession the mortgagee must hold under his mortgage, in recognition of the rights of his mortgagor. Not only must he be ready and willing at all times to render an accounting to his mortgagor of the profits of his possession, but his claim and possession must be of such a nature that his mortgagor can compel an accounting, and that without relation to the bar of the statutes of limitation. A mortgagee in lawful possession holds as trustee for his mortgagor, both as to his claim and possession of the property, and as to the profits of his possession, and limitation in his favor can run only after a repudiation by him of his original entry with notice to his mortgagor of his hostile claim."

We think Duke v. Reed and Browne v. King, supra, deny appellees' contention that the mortgagee must enter with the consent of the mortgagor in order to claim the rights of a mortgagee lawfully in possession, for in these cases the mortgagees did not enter with permission of the mortgagor, except in so far as that permission can be legally inferred from the facts of the mortgage and its execution; but that is not the character of permission contended for by appellees. If Galloway v. Kerr (Tex.Civ.App.) 63 S.W. 180, 185, and Williams v. Connor Bros. (Tex.Civ. App.) 83 S.W.(2d) 692 (writ granted), appellees' principal cases, rest on their proposition, then, as we understand the law, these cases do not have support in the decisions of our Supreme Court.

It is our reasoned conclusion that, in affirming the judgment of the lower court and in announcing the propositions of law upon which we base our affirmance, we are not in conflict with any holding by our Supreme Court.

We overrule appellant's motion to certify this case to the Supreme Court. If we are in conflict with anything said by our Supreme Court or if the point at issue is of sufficient importance to our jurisprudence, our Supreme Court can grant a writ of error and submit this case at an early date with Williams v. Connor.

The motion for rehearing is overruled.